UTAH DEPARTMENT OF TRANSPOR-
TATION, Plaintiff and Appellee,

v.

D.A. OSGUTHORPE and the Summit
County Treasurer, Defendants
and Appellant.

No. 940237.

Supreme Court of Utah.

March 9, 1995.

Jan Graham, Atty. Gen., Donald S. Cole-
man, Asst. Atty. Gen., Salt Lake City, for
plaintiff.

Glen E. Davies, Salt Lake City, for appel-
lant.

HOWE, Justice:

Plaintiff Utah Department of Transporta-
tion ("UDOT") brought this eminent domain
action to acquire real property from D.A.
Osguthorpe for the widening of a state high-
way. Osguthorpe failed to comply with an
order compelling discovery, and the district
court entered his default. Thereafter, the
court conducted a just compensation hearing
and awarded Osguthorpe a judgment for
$228,481. His motion to set aside the default
and to vacate the judgment was denied. He
appeals.

## I. FACTS

In June 1991, UDOT commenced this ac-
tion to acquire real property from Osgu-
thorpe for the widening of the state highway
between Kimball's Junction and Park City in
Summit County. Two months later, both
parties entered into a stipulation providing
for UDOT's right to immediately occupy the
property. Osguthorpe was represented by
attorneys Robert S. Campbell, Jr., and Kevin
Egan Anderson. In the stipulation, Osgu-
thorpe agreed not to contest UDOT's motion
for an order of immediate occupancy in ex-
change for $600,000, representing UDOT's
then current approved appraisal of his land.
The parties intended this amount for the
purposes of the motion only—the actual com-
pensation figure was to be determined as the
litigation proceeded. *See* Utah Code Ann.
§ 78–34–9. The trial court entered an order

of immediate occupancy incorporating the terms of the stipulation.[1] Attorney Anderson picked up the $600,000 check in behalf of Osguthorpe.

In September 1991, Osguthorpe's counsel filed an answer to the complaint and the next month made and paid for a jury demand. However, in March 1992, his counsel filed a notice of withdrawal. A copy of the notice was served on Osguthorpe.

In June 1992, interrogatories and a request for production of documents were served on Osguthorpe. During the fall of 1992, attorney Reed Martineau engaged in some correspondence and negotiations with UDOT in behalf of Osguthorpe, although Martineau never made a formal appearance in the condemnation action. In September 1992, UDOT requested, through Martineau, that Osguthorpe respond to the discovery requests within ten days. The next month, after receiving a further extension of time within which to respond to the discovery, Martineau wrote to UDOT indicating that he would have the responses to UDOT by November 2, 1992. The responses were not submitted.

In late 1992, UDOT's construction advanced to the point where certain buildings identified in the stipulation and orders had to be removed. UDOT contacted Martineau several times requesting that personal property be removed from the buildings so they could be demolished. Osguthorpe, through Martineau, made several arrangements to remove the property by certain dates but each time failed to carry out these commitments. Also during this time, UDOT informed Osguthorpe, again through Martineau, that Park City was claiming ownership of part of Osguthorpe's property. Specifically, UDOT had a copy of a deed, dated prior to the filing of this action, wherein Osguthorpe conveyed to Park City part of his property that was adjacent to the highway.

In January 1993, UDOT wrote Martineau demanding the discovery responses by February 2, 1993. Still nothing happened. Two days after this deadline, Martineau informed UDOT that he would not represent Osgu-

thorpe. UDOT served notice on Osguthorpe of this fact and advised him to retain counsel to represent him or to appear in person in the case.

In March 1993, nearly nine months after UDOT's discovery requests had been served on Osguthorpe, UDOT moved to compel responses. This motion was served on Osguthorpe, but he failed to respond. Three weeks later, UDOT filed a notice to submit the motion to compel for decision and a proposed order. These documents were served on Osguthorpe, but he again failed to respond. In April 1993, the court granted the motion to compel, and the clerk of the court sent Osguthorpe a copy of the court's minute entry indicating the granting of the motion and entry of the order.

In November 1993, after nearly seven more months had passed and Osguthorpe had not answered the discovery requests, UDOT moved to strike his answer to the complaint and enter default. Attached to the motion to strike were copies of the court's minute entry and order compelling the answer of UDOT's discovery requests. These documents were served on Osguthorpe, but he failed to respond. A few weeks later, UDOT filed (1) a memorandum in support of its motion to strike, (2) a notice to submit UDOT's motion to strike, and (3) a proposed order striking defendant's answer and entering default. All of these documents were served on Osguthorpe but with no response.

The court granted UDOT's motion to strike and entered Osguthorpe's default in December 1993. The clerk of the court sent a copy of the court's minute entry to Osguthorpe, advising him of this action. He again made no response. The default provided for an evidentiary hearing to determine the compensation to be paid. A notice of hearing was served on Osguthorpe later that month. The notice advised him that a hearing would be held on January 10, 1994, at which time evidence would be received relative to the compensation to be paid him for UDOT's acquisition. Osguthorpe failed to respond and did not appear at the hearing.

---

1. In February 1992, the court entered an amended order of immediate occupancy that added an additional parcel of property to the condemnation action.

The court entered judgment for Osguthorpe in the amount of $228,481 on the basis of UDOT's proffered evidence. Because UDOT had already paid Osguthorpe $600,000 in obtaining the order of immediate occupancy, the court ordered him to repay UDOT the difference between the two amounts, $371,519. *See* Utah Code Ann. § 78–34–9 ("If the amount of money ... received by the defendant [in the order of immediate occupancy] is greater than the amount finally awarded, the court shall enter judgment against the defendant for the amount of the excess."). On January 11, 1994, UDOT prepared a proposed judgment of just compensation and served it on Osguthorpe at his business address in Salt Lake City—the same address that was used for mailing all other documents to him in this litigation.

On January 21, 1994, Osguthorpe, with newly retained counsel, moved the trial court to set aside his default and to vacate the proposed judgment of just compensation. In support of its motion, Osguthorpe submitted an affidavit in which he contended that (1) he had been unrepresented by counsel since the initiation of the action, (2) he had relied upon representations made to him by Governor Norman Bangerter and UDOT Director Craig Zwick that it was the desire of the State to settle the matter amicably, (3) he had not received notice of the default or of the compensation hearing, and (4) the award of just compensation was inadequate and unreasonable.

On March 2, 1994, the court entered a minute entry denying the motion, finding, "The defendant has had multiple and repeated opportunities to assert his claims and positions and has flagrantly neglected to do so." The next month, the court signed its final order of condemnation and judgment of just compensation.

## II. ANALYSIS

Osguthorpe contends that the trial court abused its discretion in (1) striking his answer and entering his default, and (2) denying the motion to set aside the default and resulting judgment of just compensation. We address the two issues in order.

### A. Striking the Answer and Entering the Default

The general rule is that a party in a civil case who refuses to respond to an order compelling discovery is subject to sanctions pursuant to Utah R.Civ.P. 37(b)(2)(C).... The sanctions are intended to deter misconduct in connection with discovery ... and require a showing of "willfulness, bad faith, or fault" on the part of the noncomplying party.... The choice of an appropriate discovery sanction is primarily the responsibility of the trial judge and will not be reversed absent an abuse of discretion.

*First Fed. Sav. & Loan Ass'n v. Schamanek,* 684 P.2d 1257, 1266 (Utah 1984) (citations omitted); *see also Amica Mut. Ins. Co. v. Schettler,* 768 P.2d 950, 961 (Utah Ct.App. 1989).[2] "Because trial courts must deal first hand with the parties and the discovery process, they are given broad discretion regarding the imposition of discovery sanctions." *Darrington v. Wade,* 812 P.2d 452, 457 (Utah Ct.App.1991); *see also Schoney v. Memorial Estates, Inc.,* 790 P.2d 584, 585 (Utah Ct. App.), *cert. denied,* 804 P.2d 1232 (1990); 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2291 (1994) (discussing the federal rule).

Rule 37(b)(2) of the Utah Rules of Civil Procedure provides in part:

If a party ... fails to obey an order to provide or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

...;

(C) an order striking out pleadings ... or rendering a judgment by default against the disobedient party....

---

2. We note that in one case, *W.W. & W.B. Gardiner, Inc. v. Park West Village, Inc.,* 568 P.2d 734, 738 (Utah 1977), this court sustained a default judgment as a sanction for a party's failure to respond to discovery requests even without a showing of willfulness, bad faith, or fault. The court found no abuse of discretion because the default judgment was justified by "persistent dilatory tactics frustrating the judicial process." *Id.*

■ The facts indicate that UDOT was more than patient in awaiting Osguthorpe's discovery responses. UDOT granted numerous deadline extensions based upon promises from Osguthorpe's counsel that the discovery would be answered. After waiting nearly nine months, UDOT sought and obtained an order of the court compelling Osguthorpe to respond. Although he admits receiving this order, it was entirely ignored. After waiting nearly seven more months, UDOT moved to strike Osguthorpe's answer and enter his default. He again failed to step forward and assert his rights. He contends that his actions and inactions are excusable because he was unrepresented by counsel and he relied upon representations made to him by representatives of the State that it was the State's desire to settle the matter amicably. We are not persuaded.

The record indicates that Osguthorpe, contrary to his affidavit, was formally represented from shortly after the inception of the case in June 1991 to March 1992. Counsel acted in his behalf in entering into a stipulation, withdrawing the $600,000 from the court, and answering the complaint. After the withdrawal of his counsel, attorney Martineau, in Osguthorpe's behalf, communicated frequently with UDOT regarding the litigation. In February 1993, after Martineau told UDOT he would not represent Osguthorpe, UDOT advised Osguthorpe to retain new counsel or to represent himself accordingly. From that date forward, the record is totally devoid of any action by Osguthorpe in the litigation until January 1994, *after* the default and compensation hearing. This is *not* a case where a confused and unassisted layman was thrown out of the courthouse simply for missing a discovery deadline. *Cf. Porter v. Martinez*, 941 F.2d 732, 733–34 (9th Cir. 1991); *Griffin v. Aluminum Co. of Am.*, 564 F.2d 1171, 1172–73 (5th Cir.1977).

Osguthorpe contends that during the litigation, he was meeting with representatives of the State—other than counsel for UDOT—regarding the State's "intent" in the case. Specifically, he says that just before leaving office in December 1992, Governor Bangerter told him that it was the State's desire to amicably settle the matter and that the State would treat him fairly. Osguthorpe also asserts that he met with UDOT Director Zwick several times during the spring of 1993 and in early December 1993. Zwick allegedly reiterated the statements made by Governor Bangerter and told Osguthorpe that UDOT would prefer negotiating a settlement rather than litigating the case. This latter discussion allegedly took place approximately eight months *after* the court had executed the order to compel and while the court was considering the motion to strike and enter default. From these conversations, Osguthorpe claims to have believed that UDOT was going to try to work out a settlement without the necessity of court intervention.

Even assuming these statements were made, they still do not justify Osguthorpe's total disregard for the litigation that was clearly moving forward. The numerous notices, motions, and orders—sent not only by UDOT, but also by the court—required Osguthorpe's performance within the structure of the judicial process. Osguthorpe does not claim that either Bangerter or Zwick told him to ignore these mailings, and nothing in the record indicates that the resolution of the case would be accomplished outside that process.

The striking of pleadings, entering of default, and rendering of judgment against a disobedient party are the most severe of the potential sanctions that can be imposed upon a nonresponding party. "The courts, in the interest of justice and fair play, favor, where possible, a full and complete *opportunity* for a hearing on the merits of every case." *Heathman v. Fabian & Clendenin*, 14 Utah 2d 60, 62, 377 P.2d 189, 190 (1962) (emphasis added) (footnote omitted); *see also Carman v. Slavens*, 546 P.2d 601, 603 (Utah 1976). This is particularly true in a condemnation case where the power of the government to take private property for public use cannot be exercised without stringent compliance with the requirements of due process. In an exercise of the power of eminent domain, due process requires that the owners be given an *opportunity* to be heard on the issue of compensation. *Bragg v. Weaver*, 251 U.S. 57, 59, 40 S.Ct. 62, 63, 64 L.Ed. 135, 137 (1919).

The fundamental requirement of due process is the opportunity to be heard, at a meaningful time and in a meaningful manner, and, *when this opportunity is granted a complainant, who chooses not to exercise it, that complainant cannot later plead a denial of procedural due process.*

*Satterfield v. Edenton–Chowan Bd. of Educ.,* 530 F.2d 567, 572 (4th Cir.1975) (emphasis added) (footnotes and quotations omitted); *see also Logan Regional Hosp. v. Board of Review of Indus. Comm'n,* 723 P.2d 427, 430 (Utah 1986).

Osguthorpe had numerous *opportunities* to be heard on the issue of compensation. Although he took advantage of two such opportunities in filing an answer and in responding to a motion for an order of immediate occupancy, he failed to respond when given the opportunity to be heard on (1) the interrogatories submitted to him, (2) the request for production of documents, (3) the notice to retain new counsel or represent himself, (4) the motion to compel, (5) the notice to submit the motion to compel for decision, (6) the order compelling him to respond to discovery, (7) the motion to strike and enter default, (8) the memorandum in support of the motion to strike, (9) the notice to submit the motion to strike for decision, (10) the order striking his answer and entering his default, and (11) the notice of hearing on the issue of compensation. All of these documents were served at Osguthorpe's place of business. While he denies receiving some of them, he was given ample notice of the proceedings against him and his obligations under the law. *See Synergetics v. Marathon Ranching Co.,* 701 P.2d 1106, 1112 (Utah 1985). We find no deprivation of his constitutional rights in this case.

The sanctions imposed required a showing of Osguthorpe's " 'willfulness, bad faith, or fault.' " *Schamanek,* 684 P.2d at 1266 (quoting *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 640, 96 S.Ct. 2778, 2779, 49 L.Ed.2d 747, 749 (1976)). "Willful failure" has been defined as " 'any intentional failure as distinguished from involuntary noncompliance. No wrongful intent need be shown.' " *Schettler,* 768 P.2d at 961 (quoting *M.E.N. Co. v. Control Fluidics,*

*Inc.,* 834 F.2d 869, 872–73 (10th Cir.1987)). There is more than adequate evidence that Osguthorpe willfully failed to respond to the court order compelling discovery. When the sanction imposed is that of a default judgment, the most severe of sanctions, the trial court's range of discretion is more narrow than when the court is imposing less severe sanctions. *Wilson v. Volkswagen of Am., Inc.,* 561 F.2d 494, 503 (4th Cir.1977), *cert. denied,* 434 U.S. 1020, 98 S.Ct. 744, 54 L.Ed.2d 768 (1978). Even so, we do not find that the district court abused its discretion in striking Osguthorpe's answer and entering his default.

### B. Setting Aside the Default Judgment

■ Osguthorpe contends that the district court abused its discretion in denying the motion to set aside his default and the resulting judgment of just compensation because a number of lesser sanctions or remedies could have been imposed by the court without resorting to the "ultimate" sanction. However,

before we will interfere with the trial court's exercise of discretion, abuse of that discretion must be *clearly* shown.... That some basis may exist to set aside the default does not require the conclusion that the court abused its discretion in refusing to do so when the facts and circumstances support the refusal.

*Katz v. Pierce,* 732 P.2d 92, 93 (Utah 1986) (emphasis added) (citations omitted); *see also Darrington,* 812 P.2d at 457 (trial courts vested with considerable discretion to grant or deny motions to set aside default judgments).

Osguthorpe contends that the delays did not prejudice UDOT since it already had possession of the property and the road-widening project was well under way. We disagree. UDOT spent a great deal of time and resources in attempting to bring nearly three years of litigation to an end. The repeated interferences with UDOT's ability to determine the compensation amount, and thus to obtain a decision in the case, constituted sufficient prejudice. *See Wanderer v. Johnston,* 910 F.2d 652, 656 (9th Cir.1990).

The facts and circumstances of this case support the court's finding that defendant

"has had multiple and repeated opportunities to assert his claims and positions and has flagrantly neglected to do so." We find no abuse of discretion. Based upon Osguthorpe's refusal to cooperate and provide requested information, he cannot now be heard to complain because of his dissatisfaction with the result.

We therefore affirm the district court's entry of Osguthorpe's default and the judgment of just compensation.

ZIMMERMAN, C.J., STEWART, Associate C.J., and DURHAM and RUSSON, JJ., concur.