Paula Jean **WRIGHT** and the State of Utah, by and through Utah State Department of Social Services, Plaintiffs and Appellants,

v.

**Johnny Frank WRIGHT, Defendant and Appellee.**

No. 960367–CA.

Court of Appeals of Utah.

July 3, 1997.

Floyd W. Holm, Cedar City, for Plaintiffs and Appellants.

Willard R. Bishop, Cedar City, for Defendant and Appellee.

Before DAVIS, WILKINS and ORME, JJ.

## OPINION

WILKINS, Associate Presiding Judge:

Paula Jean Wright (Mother) appeals two orders and a judgment entered by the trial court affecting the custody of the parties' child: (1) an order imposing several discovery sanctions on Mother, including a judgment by default; (2) the judgment by default, which transferred custody of the parties' child from Mother to Johnny Frank Wright (Father); and (3) an order denying her motion for relief from the judgment by default. We affirm the trial court's order imposing sanctions on Mother, but vacate the judgment by default and remand for further proceedings.

## BACKGROUND

Mother and Father divorced in February 1991, at which time Mother was granted custody of their child. In August 1995, Father filed a petition to modify the divorce decree, by which he sought custody of the parties' child. In September 1995, Mother filed both an answer to Father's petition and a counter-petition, by which she sought increased child support and attorney fees.

In October 1995, Father submitted his first set of discovery requests to Mother. That same month, Mother also submitted her first set of discovery requests to Father. Then, before answering Father's requests for discovery, Mother's attorney, Michael Park, withdrew as her counsel on January 26, 1996. At the end of that month, Father's attorney sent Mother a document entitled Notice to Appoint Counsel or to Represent Self. This short document states that it is providing notice to Mother that, because her counsel had withdrawn, she needs to either appoint counsel or represent herself in the pending matter.

In April 1996, Father filed a motion (motion for sanctions) requesting that the trial court strike Mother's answer and counter-petition and enter judgment in favor of Father. Father sought these sanctions because Mother had not responded to his discovery requests. Although Father admitted that he had not responded to Mother's discovery requests either, he contended that Father's attorney and Mother's former attorney had agreed that Mother should respond to Father's requests first. On April 23, 1996, the trial court entered an order granting Father's motion for sanctions. As part of the order, the trial court made orders striking Mother's answer and counter-petition from the record, entering Mother's default, and entering judgment by default. As part of the same document, the trial court also set forth the judgment by default, which judgment included transferring custody of the parties' child from Mother to Father.

On May 2, 1996, after obtaining new counsel, Mother filed a motion for relief from both the court's order imposing sanctions and the judgment by default. Through this motion, Mother requested that the court set aside the order and judgment, which request, she argued, was warranted by excusable neglect. Mother also filed both a motion for a stay of execution of the court's first order and a request for an expedited hearing and decision. In support of her motions, Mother filed an affidavit explaining the circumstances she believed constituted excusable neglect for her failure to timely answer Father's discovery requests.

In her affidavit, Mother explained that her former attorney, Mr. Park, had mailed a copy of Father's discovery requests to her in October 1995. Because Mother heard nothing further from her attorney, and because she had heard from others that Father was experiencing marital problems, she thought the matter had been dropped. In January 1996, she received the notice of withdrawal from Mr. Park, followed by the notice from Father's attorney to appoint counsel or to represent herself.

Mother again did not hear anything until early April 1996, when she received Father's motion for sanctions. Upon receiving that motion, Mother immediately sought assistance from Mr. Park. Mr. Park told her he would not represent her unless she paid him a retainer fee. Because she could not afford to pay a retainer fee, Mr. Park suggested she contact Utah Legal Services, which had represented her in her divorce proceeding.

Mother then called Utah Legal Services in Salt Lake City and was advised to contact the Cedar City Office because her case was pending in Washington County. Mother contacted the Cedar City Office. On April 24, 1996, she received a letter from Utah Legal Services advising her that, although she was financially eligible to receive representation from Legal Services, it could not handle her case. Mother then immediately contacted her current counsel, who agreed to represent her. However, by the time Mother's current counsel had reviewed her case and agreed to represent her, the trial court had already granted Father's motion for sanctions and entered the judgment by default against her.[1]

The court granted Mother's request for an expedited hearing, and the parties presented oral arguments. After hearing oral arguments and reviewing Mother's affidavit and motions, the court entered an order denying both Mother's motion for relief and her motion for a stay of execution. Mother filed this appeal.

## ANALYSIS

Mother appeals from the trial court's judgment and two orders. Specifically, Mother argues the trial court abused its discretion by imposing sanctions against her, and particularly by ordering a judgment by default. Mother also argues, as her challenge to the trial court's second order, that the trial court abused its discretion by denying her motion to set aside the judgment by default.[2]

### A. Order Imposing Rule 37 Discovery Sanctions

Rule 37 of the Utah Rules of Civil Procedure provides trial courts with the authority to impose discovery sanctions on noncomplying parties, as the trial court imposed on Mother in this case. Rule 37(d) provides, in relevant part:

> If a party ... fails ... to serve answers or objections to interrogatories ... the court

1. Mother also testified in her affidavit that she believed transferring custody of the parties' child, who was then six-and-one-half years of age and enrolled in public school, would be very traumatic for the child.

2. Although Mother states that she is appealing from the trial court's second order denying both her motion for relief and her motion for a stay of execution, she only presents arguments in her brief regarding the trial court's failure to grant her relief from the judgment by default. Therefore, we do not address whether the trial court abused its discretion in denying her motion for relief from its orders imposing sanctions—such as the order striking her pleadings—and from its denial of her motion for a stay of execution. *See State v. Vigil*, 922 P.2d 15, 28 (Utah.Ct.App.1996) ("It is well established that this court will decline to consider an argument that a party has failed to adequately brief.").

in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under Paragraphs (A), (B), and (C) of Subdivision (b)(2) of this rule.

Utah R. Civ. P. 37(d). Paragraph (C) of Subdivision (b)(2) provides that the trial court may impose the following sanctions on a party:

> an order striking out pleadings or parts thereof, staying further proceedings until the order is obeyed, dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party[.]

*Id.* 37(b)(2)(C).

■ To impose discovery sanctions under Rule 37, the trial court must first meet the threshold requirement of finding on the part of the noncomplying party at least one of the following four circumstances: "(1) the party's behavior was willful; (2) the party has acted in bad faith; (3) the court can attribute some fault to the party; or (4) the party has engaged in persistent dilatory tactics tending to frustrate the judicial process." *Morton v. Continental Baking Co.*, 938 P.2d 271, 276 (Utah 1997); *see also id.* at 274–75. Once the trial court has made one of these four findings, the noncomplying party's conduct is considered to "meri[t] sanctions under [R]ule 37." *Id.* at 275–77.

■ In this case, the trial court fulfilled this threshold requirement by making the following finding in its order imposing sanctions:

> [Mother] has failed to respond to discovery propounded by Defendant, and that such failure on the part of [Mother] has impeded and frustrated the judicial process, in that it has hindered trial of this matter upon its merits, and has made it impossible to determine the factual basis for any allegations made by [Mother] in her "Answer to Petition to Modify Decree of Divorce" and in her "Counter–Petition[.]"

In other words, the trial court "attribute[d] some fault to [Mother]," *id.* at 274–75, 275–77, for her failure to respond to Father's discovery requests.

■ Once the trial court has made one of the required four findings and thus determined that the noncomplying party's conduct merits Rule 37 discovery sanctions, the trial court can then choose which discovery sanctions are most appropriate to impose. *See id.* at 274–75. In this case, after attributing fault to Mother, the trial court imposed three discovery sanctions on her because she had failed to respond to Father's interrogatories. First, the trial court struck Mother's answer and counter-petition from the record. Second, the trial court entered Mother's default in regards to Father's petition. Third, the court entered a judgment by default in favor of Father and against Mother.

On appeal, Mother challenges the trial court's orders imposing these three sanctions. Particularly, Mother argues that the trial court abused its discretion by imposing the sanction of judgment by default because she contends that Utah case law has discouraged this sanction, which Mother argues should only be imposed in cases when the noncomplying party engages in egregious conduct.

■ We agree with Mother that the sanctions imposed on her by the trial court are harsh and extreme sanctions, especially that of judgment by default. *See Utah Dep't of Transp. v. Osguthorpe*, 892 P.2d 4, 7 (Utah 1995) ("The striking of pleadings, entering of default, and rendering of judgment against a disobedient party are the most severe of the potential sanctions that can be imposed upon a nonresponding party."); *W.W. & W.B. Gardner, Inc. v. Park W. Village, Inc.*, 568 P.2d 734, 738 (Utah 1977) (calling default judgment "extreme sanction"). We also agree with Mother that judgments by default are disfavored by the law. *See Osguthorpe*, 892 P.2d at 7 (" 'The courts, in the interest of justice and fair play, favor, where possible, a full and complete opportunity for a hearing on the merits of every case.' " (citation omitted) (emphasis omitted)); *Interstate Excavating, Inc. v. Agla Dev. Corp.*, 611 P.2d 369, 371 (Utah 1980) (stating that default judgments "are not favored in the law, especially where a party has timely responded with challenging pleadings," in which case "some

caution should be observed to see that the party is not taken advantage of," because "access to the courts for the protection of rights and the settlement of disputes is one of the most important factors in the maintenance of a peaceable and well-ordered society"). Such an extreme sanction "should be meted out with caution." *Darrington v. Wade,* 812 P.2d 452, 456 (Utah.Ct.App.1991). We also agree with Mother that compared to cases such as *Osguthorpe,* the trial court's decision to impose the sanctions it did under the circumstances of this case seems unduly harsh. *See Osguthorpe,* 892 P.2d at 7 ("This is *not* a case where a confused and unassisted layman was thrown out of the courthouse simply for missing a discovery deadline.").

Nevertheless, as the Utah Supreme Court emphasized in its recent decision *Morton v. Continental Baking Co.,* although some of Rule 37's discovery sanctions are harsh and extreme, Rule 37 grants the trial court broad discretion to impose them because the trial court deals first hand with the parties and the discovery process. *See Morton,* 938 P.2d at 274–75. As such, we will not interfere with the trial court's imposition of discovery sanctions in this case, including its choice of sanctions, unless Mother clearly shows the trial court abused its discretion. *See id.; First Fed. Sav. & Loan Ass'n v. Schamanek,* 684 P.2d 1257, 1266 (Utah 1984) ("The choice of an appropriate discovery sanction is primarily the responsibility of the trial judge and will not be reversed absent an abuse of discretion."). To show the trial court abused its discretion in choosing which sanction to impose, Mother must show either that the sanction is based on an erroneous conclusion of law or that the sanction lacks an evidentiary basis. *See Morton,* 938 P.2d at 274–75.

Although Mother argues the trial court's sanctions are unduly harsh given the circumstances of the case, she has not successfully shown that the trial court abused its discretion. First, she has not challenged the evidentiary basis of the trial court's decision to impose sanctions, as she has not disputed her failure to answer Father's interrogatories. Mother also has not argued that the trial court's decisions, by which it deter-

mined to impose sanctions and which sanctions to impose, were based on an erroneous conclusion of law. As such, Mother has failed to successfully challenge both the trial court's finding that attributes fault to her and its decisions as to which Rule 37 sanctions to impose. Consequently, we cannot say the trial court clearly abused its discretion in either deciding to impose sanctions or deciding which sanctions to impose. We therefore affirm the trial court's order striking Mother's answers and counter-petition and entering default.

However, our analysis does not end with our decision that the court was within its discretion in ordering Rule 37 discovery sanctions against Mother. Because one of the trial court's Rule 37 sanctions ordered a judgment by default, we next review that judgment, which modified a child custody order.

**B. Judgment by Default that Transferred Custody of the Parties' Child**

The judgment by default in this case awarded Father custody of the parties' child, transferring custody of the child from Mother to Father. Evaluating this situation, in which a judgment by default modified a child custody order, requires us to reconcile two bodies of case law: (1) case law we have reviewed in the previous section that addresses a trial court's ability to impose discovery sanctions, including judgments by default; and (2) case law addressing the requirements a trial court must follow when modifying a child custody order.

Although Utah case law establishes that trial courts have broad discretion to impose discovery sanctions, other Utah case law also requires trial courts to make the following two findings of fact before modifying a child custody order: "[1] there has been a material change in the circumstances upon which the earlier order was based, and [2] a change in custody is in the best interests of the child." *Soltanieh v. King,* 826 P.2d 1076, 1079 (Utah.Ct.App.1992); *see also Hogge v. Hogge,* 649 P.2d 51, 54 (Utah 1982). Even when the original custody determination did not involve a thorough examination

into the child's best interests, as in this case,[3] Utah law requires that when ruling on a petition requesting a change in a child's custody, the trial court "still must conduct a separate analysis and make separate findings as to [a] substantial change in circumstances." *Cummings v. Cummings*, 821 P.2d 472, 475 (Utah.Ct.App.1991). Then, "[o]nly if a substantial change of circumstances is found should the trial court consider whether a change of custody is appropriate given the child's best interests." *Id.* at 475–76.

For several years, Utah courts have required trial courts to follow this two-step procedure before modifying a child custody order. *See, e.g., Kramer v. Kramer*, 738 P.2d 624, 625–26 (Utah 1987); *Hogge*, 649 P.2d at 54; *Sigg v. Sigg*, 905 P.2d 908, 912, 915 (Utah.Ct.App.1995); *Soltanieh*, 826 P.2d at 1079; *Cummings*, 821 P.2d at 475; *Crouse v. Crouse*, 817 P.2d 836, 838 (Utah.Ct.App. 1991); *Thorpe v. Jensen*, 817 P.2d 387, 391 (Utah.Ct.App.1991); *Walton v. Walton*, 814 P.2d 619, 621–22 (Utah.Ct.App.1991); *Smith v. Smith*, 793 P.2d 407, 410 (Utah.Ct.App. 1990); *Hardy v. Hardy*, 776 P.2d 917, 922–23 (Utah.Ct.App.1989). However, because all these cases were contested and decided upon the merits, none of them addressed whether a trial court must follow this same two-step procedure to modify a child custody order when the modification is part of a judgment by default.

Nevertheless, strong public policy reasons underlie the two-step requirement of these child custody cases. This procedure allows courts to monitor the best interests of children and especially to provide stability to children by protecting them from "ping-pong" custody awards. *See Kramer*, 738 P.2d at 626, 627 ("[S]table custody arrangements are of critical importance to the child's proper development. The two-part *Hogge* test is founded upon that premise.... 'The rationale is that custody placements, once made, should be as stable as possible unless the factual basis for them has completely changed.'" (citation omitted)); *Hogge*, 649

P.2d at 54 (recognizing "'the importance of a stable and secure homelife for children who are shifted from one parent figure to another and required to make adjustments attendant upon such changes'" in adopting two-step procedure (citation omitted)); *Cummings*, 821 P.2d at 475 (stating that one purpose of required procedure for transferring custody of child is to "'protect the child from "ping-pong" custody awards'" (citation omitted)); *Crouse*, 817 P.2d at 839 ("'[The *Hogge* test] was set forth "to protect the child from 'ping-pong' custody awards and the accompanying instability so damaging to a child's proper development."'" (citations omitted)); *Thorpe*, 817 P.2d at 391 ("'[A] central premise of our recent child custody cases is the view that stable custody arrangements are of critical importance to the child's proper development.'" (citation omitted)); *Walton*, 814 P.2d at 622 ("[T]he high threshold established in *Hogge* was set forth 'to "protect the child from 'ping-pong' custody awards" and the accompanying instability so damaging to a child's proper development.'" (citations omitted)); *cf. Kishpaugh v. Kishpaugh*, 745 P.2d 1248, 1251 (Utah 1987) ("The presumption favoring natural parents is analogous to the presumption favoring an existing custody arrangement. Like the natural-parent presumption, the existing-placement presumption is based on the assumption that it will normally serve the best interests of the child.").

The important public policy to have courts ensure that a child's best interests will be met before transferring custody of the child applies in all cases involving the change in a child's custody, not just in cases involving disputes between divorced parents that are decided upon the merits. *See, e.g., State in Interest of H.R.V.*, 906 P.2d 913, 915–16 (Utah.Ct.App.1995) (stating once parent has been deprived of child's custody because of neglect, Utah Code requires that in order for child's custody to be restored to parent, parent must petition court on ground that change of circumstances has occurred and that restoration of custody is in best interests of child or public). Thus, these policy rea-

---

**3.** The parties' original divorce decree granting Mother custody of the parties' child is a judgment by default and does not include any find-

ings regarding the best interests of the parties' child.

sons apply just as much to cases involving judgments by default as to cases involving a litigated dispute decided upon the merits.

As such, in consideration of the strong public policy to safeguard the interests of children,[4] we hold that before a trial court may enter a judgment by default that transfers custody of a child, the trial court must take evidence and then make findings that a substantial change of circumstances has occurred and that transferring custody of the child is in the child's best interests.[5] In this case, the record does not indicate that the trial court took any evidence regarding the parties or their child, or that it made these two required findings before modifying the existing custody order. Therefore, we conclude the trial court abused its discretion by modifying the child custody order because it failed to first take evidence and make the necessary findings. Consequently, we vacate the judgment by default and remand for further proceedings.

Given our decision to vacate the judgment by default, we need not separately address Mother's argument that the trial court abused its discretion by denying her motion for relief from the judgment by default.[6]

## CONCLUSION

We hold that the trial court did not abuse its discretion in ordering the primary sanctions it imposed against Mother. The trial court preceded its decision to order sanctions by attributing fault to Mother, and Mother has not shown that the trial court's orders imposing sanctions were based on an erroneous conclusion of law or that they lacked any evidentiary basis.

However, although we hold that the trial court did not abuse its discretion in ordering that Mother's default be entered, we also hold that the trial court did abuse its discretion by modifying the existing child custody order in the manner it did. Before transferring custody of the child, the trial court was required to find (1) that a substantial change of circumstances had occurred and (2) that transferring custody of the child from Mother to Father would be in the child's best interests. Because the trial court failed to take evidence and make these findings before entering the judgment by default, we vacate the judgment and remand for further proceedings consistent with this opinion.[7]

DAVIS, P.J., and ORME, J., concur.

---

4. In consideration of the strong public policy to protect the best interests of children, this court has also, on occasion, moderated technical, judicially created rules in situations involving children to accommodate the higher value of a child's best interests. *See, e.g., In re E.M.,* 922 P.2d 1282, 1284 (Utah.Ct.App.1996) (per curiam); *In re J.P.,* 921 P.2d 1012, 1016 (Utah.Ct. App.1996), *cert. denied,* 931 P.2d 146 (Utah 1997); *In re R.N.J.,* 908 P.2d 345, 350 (Utah.Ct. App.1995); *In re J.J.T.,* 877 P.2d 161, 163–64 (Utah.Ct.App.1994).

5. Such an evidentiary hearing could be of the type contemplated by Rule 55(b)(2) of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 55(b)(2) (allowing trial court to conduct hearings to take needed evidence when entering judgment by default when plaintiff's claim is not for sum certain, defendant has failed to plead, and clerk has entered default); *see also Stevens v. Collard,* 837 P.2d 593, 595 (Utah.Ct.App.1992) ("A trial

court asked to render a judgment by default must first conclude that the uncontroverted allegations of an applicant's petition are, on their face, legally sufficient to establish a valid claim against the defaulting party."), *modified on other grounds,* 863 P.2d 534 (Utah.Ct.App.1993).

6. We have reviewed the parties' other arguments and decline to address them because they are without merit. *See State v. Carter,* 776 P.2d 886, 888 (Utah 1989) (stating court may decline to address arguments without merit on appeal).

7. This disposition is without prejudice to Father's right to petition the trial court for an order staying return of the child to Mother pending the outcome of such further proceedings. An order of this nature may be appropriate to prevent compounding the prior error by needlessly "ping-ponging" the child between the custodial parents.