2018 UT App 181

## THE UTAH COURT OF APPEALS

ELDA CHAPARRO,
Appellant,
*v.*
ENRIQUE TORERO,
Appellee.

Opinion
No. 20170494-CA
Filed September 20, 2018

Second District Court, Ogden Department
The Honorable Ernest W. Jones
No. 134901419

Randall W. Richards, Attorney for Appellant

Deborah L. Bulkeley, Attorney for Appellee

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES GREGORY K. ORME and JILL M. POHLMAN concurred.

HAGEN, Judge:

¶1     Elda Chaparro (Mother) appeals the district court's entry of judgment by default as a sanction for her failure to pay a custody evaluator. The judgment awarded Enrique Torero (Father) sole physical custody of their minor child, A.T., modifying the custody arrangement from their divorce decree. The district court did not take any evidence to support a finding that a substantial change of circumstances had occurred or that a transfer in custody was in the child's best interest. Because the district court did not make the required findings before entering the judgment by default, it exceeded its discretion in modifying the existing custody order. We reverse and remand.

BACKGROUND

¶2    Upon their divorce in September 2014, Mother and Father were granted joint physical and legal custody of their child, A.T. Eight months later, Mother filed a petition to modify the divorce decree based on changed circumstances. Mother sought sole physical custody of A.T. because Father had moved out of the area, making joint physical custody impractical. Father filed an answer denying Mother's allegations and seeking dismissal for failure to state a cause of action. Father also filed a motion seeking a court determination of where the child should go to school as well as a custody evaluation.

¶3    At a hearing on the motions, the parties stipulated that A.T. would attend the school Father selected and agreed to a custody evaluation regarding Mother's petition to modify. The court then ordered a custody evaluation, splitting the cost equally between the parties.

¶4    Pursuant to rule 4-903 of the Utah Rules of Judicial Administration, the domestic relations commissioner held a settlement conference in which the custody evaluator participated. When the parties were unable to reach a resolution, the commissioner certified the case for trial. The commissioner's pre-trial order provided that either party could request a written report from the evaluator and that "both parties shall share the costs of the written report equally, one-half (1/2) to each."

¶5    Father requested a written custody evaluation, and the evaluator informed the parties that the cost of such a report was $3,500, which needed to be paid in full before the report could be prepared. Father promptly paid the evaluator for his half.

¶6    Roughly two months before trial, the evaluator notified the court that she had not received payment from Mother and, consequently, would be unable to submit the report before trial.

Father subsequently filed a motion to continue the trial as well as a motion for sanctions and attorney fees.

¶7     In the motion for sanctions, Father alleged that the custody evaluator had recommended, during the settlement conference, that Father "should have physical and legal custody to the parties' minor child and that [Mother's] parent time should be substantially reduced." Father also alleged that Mother had "no intention of complying with the court's order and paying" the evaluator because the evaluation was adverse to her. As a sanction for Mother's failure to pay, Father sought an order awarding him "the sole physical and legal custody of the parties' minor child," attorney fees, and other appropriate relief.

¶8     The district court held a telephone conference with the parties' attorneys. Father's attorney asserted that Mother was "flat-out refusing to pay" for the custody evaluation because "it was readily apparent [from the rule 4-903 hearing] that the report was very negative towards [Mother]." Mother's attorney conceded, "[Father's counsel] is correct, [the evaluator's] discussion at the 4-903 hearing was not favorable to [Mother]." Her attorney explained that Mother did not intend to call the evaluator as a witness at trial and believed that the evaluator's testimony was unnecessary given that Father had not filed a counterpetition seeking sole custody of A.T.

¶9     The district court suggested that, if Father was now asking for sole custody, Father should amend his pleadings to include that relief. Father's attorney agreed and indicated that he would immediately file an amended answer and counterpetition.

¶10    The district court granted the motion to continue but deferred its ruling on sanctions. The court again ordered that "both sides pay one-half the cost" of the written report. The court warned that it might impose sanctions if Mother persisted in her refusal to pay:

> I think I can grant as a sanction custody to the father if she doesn't pay, and that's kind of why I want her to pay one half, is because if she continues to take this position, I'm not going to pay, then to me, a logical sanction is to say fine, the Court's going to award custody to the father, but I don't think I can do that until the pleadings are amended.

¶11    The district court issued an order requiring Mother to immediately pay the evaluator and allowing Father to amend his pleadings. Father filed an amended answer and counterpetition to modify the divorce decree by granting him sole physical and legal custody.

¶12    The following month, the district court held a telephone conference with Father's attorney and Mother, appearing pro se.[1] Father's attorney explained that Mother did not pay the evaluator as ordered and had instead offered to pay $50 per month until the debt was satisfied. Based on her failure to comply with the court's order, Father asked the court to strike Mother's pleadings and enter a default judgment granting sole custody to Father.

---

1. Mother claimed that she had fired her former attorney because he misrepresented to the court that she was willfully refusing to pay. Mother explained:

> It's the other attorney communicating [to] you otherwise, that I was not going to pay, and it's not my fault that I got incompetent counsel communicating [to] you other than what I communicated [to] him. That's why I'm here, Your Honor, communicating to you what my intent is. I'm not refusing to pay [the evaluator]. I will pay [the evaluator]. I am trying to get the money . . . [s]o I can pay [the evaluator] all the amount.

¶13    Mother objected, insisting she was willing but unable to pay. Mother confirmed that she was able to "pay $50, . . . until [she was] able to come up with the whole amount." The court explained to Mother that "it just doesn't work that way" because she had already been ordered to pay one-half of the fee immediately.

¶14    Mother again objected, saying, "Your Honor, I don't have money. I don't have money. I don't have money right now. I will pay her immediately. I am trying to come up with the funds." The court explained that taking a year or two to pay in installments was unacceptable because the case needed to move forward to trial. Mother objected again, saying, "I just got done telling you that I don't have all the funds right now." Mother insisted that she had told her former attorney that she would pay the evaluator "when she renders services," and that her former attorney had misrepresented her position to the court. The court asked again, "So you don't intend to pay your half of the fee to [the evaluator]?" At that point, Mother suggested that it might be easier for her to communicate in Spanish and offered to respond to the court in writing, but she reiterated, "I'm saying I will pay her as soon as I come up with the full amount. I'm not refusing to pay." Mother stated that she was trying to "get money from [her] kids, or a loan for [her] house" and would try to come up with the full amount within four to six weeks.

¶15    The court asked Father's attorney how long the case had been pending, but Mother continued speaking. Father's counsel stated that "she always interrupts" and "we've had problems with her complying with the court orders," which counsel asserted had resulted in delay. Mother continued to object, but the court stated, "All right, [Father's attorney], I'll grant your motion. We'll just strike her answer and enter a default judgment."

¶16    Following the telephone conference, the district court signed a written order, prepared by Father, stating that because

Mother had "failed to comply with the Court's prior Orders, her Petition for Modification is hereby stricken and judgment shall be entered pursuant to the [Father's] Counter Petition to Modify Decree of Divorce."[2] The court later entered an order modifying the divorce decree to award Father "sole legal and physical custody of the parties' minor child." The order also provided that "[Father] is to be awarded his costs and attorney fees against [Mother]."

¶17 Contemporaneously, the court entered "Findings of Fact and Conclusions of Law," drafted by Father's attorney, in which the court purported to make factual findings that (1) there was a "substantial and material change[] warranting the modification of the custody" and (2) the change was in the child's "best interests." These findings repeated Father's alleged facts verbatim.

¶18 Mother appealed after the modified divorce decree was entered but before the court's final order setting the amount of attorney fees.

ISSUES AND STANDARDS OF REVIEW

¶19 While Mother states several issues on appeal, the substance of her arguments relates to three discrete rulings by the district court. First, she challenges the district court's decision to allow Father to amend his answer and file a counterpetition for sole physical and legal custody. "We review a district court's decision to grant an amendment of the

---

2. The sanction sought by Father was to strike Mother's pleadings. Although the court had verbally ordered Mother's answer stricken, Mother had not answered Father's counterpetition, and thus there was no answer to strike. Instead, the court struck Mother's petition to modify.

pleadings for abuse of discretion resulting in prejudice." *Swan Creek Vill. Homeowners v. Warne*, 2006 UT 22, ¶ 18, 134 P.3d 1122.

¶20  Second, Mother challenges the district court's award of sole physical and legal custody to Father as a sanction for her failure to pay her share of the custody evaluator's fee. Generally, "we overturn a sanction only in cases evidencing a clear abuse of discretion." *Kilpatrick v. Bullough Abatement, Inc.*, 2008 UT 82, ¶ 23, 199 P.3d 957 (reviewing discovery sanctions). "An abuse of discretion may be demonstrated by showing that the district court relied on an erroneous conclusion of law or that there was no evidentiary basis for the trial court's ruling." *Id.* (quotation simplified).

¶21  Third, Mother challenges the award of attorney fees to Father. "The [district] court's decision regarding whether to award attorney fees will be overturned only if the [district] court exceeded the bounds of its discretion." *Neff v. Neff*, 2011 UT 6, ¶ 48, 247 P.3d 380. "But the related question of whether the [district] court's findings of fact in support of an award of fees are sufficient is a question of law that we review for correctness." *Id.* (quotation simplified).

ANALYSIS

I. Subject Matter Jurisdiction

¶22  Before turning to the issues raised by the parties, we address whether we have jurisdiction over this appeal. In his brief, Father argues that we lack jurisdiction over the attorney fees issue, but he does not challenge our jurisdiction over the appeal generally. Nonetheless, "because subject matter jurisdiction goes to the court's authority to hear a case, courts have an independent obligation to raise and decide jurisdictional questions that the parties either overlook or elect not to press."

*In re adoption of Baby E.Z.*, 2011 UT 38, ¶ 36, 266 P.3d 702 (quotation simplified).

¶23 On May 22, 2017, the district court entered a modified divorce decree supported by separately entered findings of fact and conclusions of law. At that time, the court ruled that Father was entitled to an award of his costs and attorney fees. Mother filed her notice of appeal on June 19, 2017, seeking review of the court's "final order" dated May 22, 2017. When the notice of appeal was filed, the court had not yet entered an order setting the amount of attorney fees. The district court docket reflects that the order awarding attorney fees was entered on September 15, 2017. An amended judgment reflecting the amount of the attorney fees award was not entered until November 24, 2017.[3] Mother never filed an amended notice of appeal.

¶24 Until recently, any "appeal filed before a claim for attorney fees had been resolved was premature and would be dismissed." Utah R. Civ. P. 58A advisory committee notes on 2016 amendments. But in 2016, rule 4(b) of the Utah Rules of Appellate Procedure was amended "to change the effect of a motion for attorney fees on the appealability of a judgment." *Id.* The rule now provides:

> A notice of appeal filed after announcement or entry of judgment, but before entry of an order disposing of [a motion or claim for attorney fees under Rule 73 of the Utah Rules of Civil Procedure], shall be treated as filed after entry of the order and on the day thereof, except that such a notice of appeal is effective to appeal only from the underlying judgment.

---

3. Neither the order setting the award of attorney fees or the amended judgment is part of the record on appeal.

Utah R. App. P. 4(b)(2). In other words, "[i]f a notice of appeal is filed before the order resolving the timely motion, the appeal is not dismissed; it is treated as filed on the day the order ultimately is entered." Utah R. Civ. P. 58A advisory committee notes on 2016 amendments.

¶25    In applying the new rule 4(b), Father argues that once the court entered the order setting the amount of attorney fees, Mother's notice of appeal became effective, but only as to the May 22, 2017 order modifying the divorce decree. But, in a recent opinion, this court held that the new rule applies only if the pending motion for attorney fees is filed post-judgment. *See McQuarrie v. McQuarrie*, 2017 UT App 209, ¶ 4, 407 P.3d 1096 (per curiam). "[B]ecause rule 4(b)(1)(F) applies only to *post-judgment* motions for attorney fees and no such motion was filed," this court held that "traditional case law concerning the finality of judgment for purposes of appeal still applies." *Id.* (emphasis added). Under that traditional case law, "a [district] court must determine the amount of attorney fees awardable to a party before the judgment becomes final for the purposes of an appeal" as of right. *ProMax Dev. Corp. v. Raile*, 2000 UT 4, ¶ 15, 998 P.2d 254. If the notice of appeal is prematurely filed before entry of a final, appealable order, the appellate court lacks jurisdiction to hear the appeal. *Id.* ¶ 16.

¶26    In concluding that the new rule applies only to post-judgment motions for attorney fees, our opinion in *McQuarrie* relies on 4(b)(1)(F)'s specific reference to "a motion or claim for attorney fees under rule 73 of the Utah Rules of Civil Procedure." 2017 UT App 209, ¶ 4 (quotation simplified). Looking to the language of rule 73, we noted that a motion pursuant to the rule must "specify the judgment." *Id.* (quotation simplified). Because the application of rule 4(b)(1)(F) is limited to motions under rule 73, which in turn seems to presume that a judgment will exist when such a motion is filed, we concluded

that rule 4(b)(1)(F) applied only to post-judgment motions for attorney fees.[4]

¶27    Thus, under *McQuarrie*, we lack jurisdiction, not just over the attorney fees award as Father contends, but over the entire appeal. In *McQuarrie*, we held that we lacked jurisdiction where the husband filed his notice of appeal from an order dismissing his motion to modify a divorce decree and awarding attorney fees in an amount to be determined at a later date. Similarly, here, Mother filed her notice of appeal from entry of the modified divorce decree, which, among other things, awarded Father attorney fees in an amount to be determined. Because the modified divorce decree, like the order in *McQuarrie*, contemplated additional action by the court, it was not final for

---

4. *McQuarrie*'s holding that *ProMax* still applies to pre-judgment motions for attorney fees appears to be in tension with the advisory committee's notes on the 2016 amendments. The committee notes state that the amendments were part of a coordinated effort to "effectively overturn *ProMax*" to "protect the appellate rights of parties and avoid the cost of premature appeals." Utah R. Civ. P. 58A advisory committee notes on 2016 amendments. However, advisory committee notes "are not law" and "cannot override the terms of the rules themselves." *In re Larsen*, 2016 UT 26, ¶ 31, 379 P.3d 1209 (addressing advisory committee notes to the Utah Rules of Professional Conduct); *see also RJW Media Inc. v. Heath*, 2017 UT App 34, ¶ 22, 392 P.3d 956 (noting that the advisory committee notes to the Utah Rules of Civil Procedure "offer persuasive, but not binding, interpretative guidance for the rule"). If rule 4(b)(1)(F) was intended to apply whenever the only issue left to be decided is the calculation of attorney fees, limiting the rule's application to a "motion or claim for attorney fees under rule 73 of the Utah Rules of Civil Procedure" was overly restrictive. *See McQuarrie v. McQuarrie*, 2017 UT App 209, ¶ 4, 407 P.3d 1096 (per curiam).

purposes of appeal. And because the unresolved attorney fees issue did not result from a post-judgment motion under rule 73, *McQuarrie* holds that rule 4(b)(1)(F) does not apply. Consequently, we lack appellate jurisdiction to hear this case as an appeal as of right.

¶28 Ordinarily, this conclusion would necessitate dismissal of the appeal. *See Loffredo v. Holt*, 2001 UT 97, ¶ 11, 37 P.3d 1070 ("Where the final judgment rule is not satisfied, the proper remedy for this court is dismissal."). "'In extraordinary cases,'" however, "'we may choose to treat a purported [appellate rule 3 appeal of right as an interlocutory appeal under [appellate rule 5].'" *A.J. Mackay Co. v. Oakland Constr. Co.*, 817 P.2d 323, 325 (Utah 1991) (quoting *Williams v. State*, 716 P.2d 806, 808 (Utah 1986)). We recognize that "the course suggested in *Williams* is to be taken very sparingly." *Id.* Such exceptional treatment cannot be justified merely because the jurisdictional defect escaped earlier detection and the appeal has progressed to a stage where dismissal would constitute a significant waste of party and judicial resources. If those circumstances were sufficient, it might "encourage counsel to attempt to appeal from unappealable orders and to conceal the nature of the orders from the court." *Id.* We are also mindful that "every case that we permit to improperly occupy a space" on our docket reduces the amount of resources we can devote to appeals properly taken as of right. *Id.* Finally, we understand that "we bear a heavy burden of justification when we single out one improperly taken appeal for preferential treatment that has been denied so many others." *Id.* "[F]or such circumstances to exist, a minimum threshold requirement would be that the order appealed from be one we would have initially deemed worthy of appeal under rule 5." *Id.* at 326. Additionally, "we should also consider how we have treated other unappealable orders that have evaded early detection by this court" and be able to "explain persuasively why any one case deserves treatment denied to others." *Id.* at 325–26.

¶29 We believe that this is such an extraordinary case. The primary issue on appeal is whether the district court abused its discretion when it modified custody as a sanction against Mother without considering the best interests of the child. As explained in Part IV, this court has previously held that a district court cannot impose such a sanction. Any change in custody must be accompanied by adequately supported findings that the change is in the best interests of the child. *See infra* ¶ 38. Given that the sanctions imposed by the district court over Mother's objection were in contravention of controlling authority, we would have initially deemed this issue worthy of an interlocutory appeal under rule 5. This is especially true where, at the time Mother filed her notice of appeal, Father had yet to submit an affidavit of attorney fees and costs and a final judgment on the matter was still some months off. Considering the time-sensitive nature of a child's custody and the uncertainty regarding when the attorney fees issue would be resolved, this case would have been suitable for interlocutory review to correct the patent error below.

¶30 The nature of this case also justifies special treatment. Unlike the order dismissing petitions to modify a divorce decree in *McQuarrie*, this case involves a custody order affecting a minor child. As we explain in Part IV, the child's best interests are of paramount importance in making custody determinations. *See infra* ¶ 39. A modification in custody to punish a recalcitrant parent-litigant without considering the best interests of the child would work a manifest injustice.

¶31 If the only interest at stake in this appeal was that of Mother, we would not be inclined to rescue her from her own oversight, even in light of her pro se status at the time this appeal was filed and the potential confusion caused by the 2016 amendments to the court rules. However, this appeal involves the best interests of a minor child, and those interests have not been properly considered despite well-established law requiring such findings as a prerequisite to a change in custody. Because

we conclude that this is an extraordinary case, we choose to treat it as an interlocutory appeal under rule 5 for which we have jurisdiction.

## II. Inadequate Briefing

¶32    Father argues that Mother has inadequately briefed each issue on appeal. Although Mother filed her opening brief pro se, parties who represent themselves are "held to the same standard of knowledge and practice as any qualified member of the bar." *Allen v. Friel*, 2008 UT 56, ¶ 11, 194 P.3d 903 (quotation simplified). We require a party to "explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on appeal." Utah R. App. P. 24(a)(8).

¶33    While Mother's brief is not in strict compliance with rule 24, appellate courts are "generally lenient with pro se litigants," extending "every consideration that may reasonably be indulged." *Bell v. Bell*, 2013 UT App 248, ¶¶ 24, 27, 312 P.3d 951 (quotation simplified). This court may, in the interests of justice, overlook inadequacies in the briefing and reach the merits. *See State v. Gamblin*, 2000 UT 44, ¶ 8, 1 P.3d 1108 (holding that an appellate court may "choose to further address defendant's arguments in the interests of justice"); *Golden Meadows Props., LC v. Strand*, 2011 UT App 76, ¶ 1 n.1, 249 P.3d 596 ("Despite these inadequacies, we exercise our discretion to decide this matter on the merits.").

¶34    Moreover, the Utah Supreme Court has recently clarified that inadequate briefing is not "an absolute bar to review of an argument on appeal." *Bank of Am. v. Adamson*, 2017 UT 2, ¶ 11, 391 P.3d 196. "An appellant who fails to adequately brief an issue will almost certainly fail to carry its burden of persuasion on appeal," but the court's analysis focuses on whether the appellant has established error, "not on whether there is a technical deficiency in briefing meriting a default." *Id.* ¶ 12

(quotation simplified). With that standard in mind, we turn to the merits of each issue on appeal.

### III. Allowing Amendment of Pleadings

¶35    Mother has failed to carry her burden of persuasion in arguing that the district court abused its discretion in permitting Father to amend his pleadings. Under rule 15 of the Utah Rules of Civil Procedure, district courts "should freely give permission [for a party to amend its pleadings] when justice requires." Utah R. Civ. P. 15(a)(2). "[District] courts should liberally allow amendments unless the amendments include untimely, unjustified, and prejudicial factors." *Daniels v. Gamma West Brachytherapy, LLC*, 2009 UT 66, ¶ 58, 221 P.3d 256.

¶36    In her issue statements, Mother faults the district court for granting Father leave to amend "at such a late stage of the case" and "in a way that prejudiced and undermined the reasonable assessments, strategies, and preparations for the case by the attorney for the Mother." Aside from these conclusory assertions in the issue statements, however, Mother's brief does not further address this argument. She does not explain how the amended answer and counterpetition were untimely, unjustified, or prejudicial in light of the continuance of trial, nor does she address any other factors that might weigh against allowing the amendment. With respect to this issue, Mother has failed to carry her burden of persuasion on appeal.

### IV. Awarding Custody as a Sanction

¶37    Mother contends the district court abused its discretion by "changing custody of the [child] to the Father, apparently based entirely on the fact that the Mother had not complied with the order to pay some remaining portion of her share of the custody evaluation" and "without taking evidence on the best interests of the child." Mother cites *Hogge v. Hogge*, 649 P.2d 51 (Utah 1982), which requires a two-step process to modify a custody award.

*Id.* at 53. Although Mother does not provide an in-depth legal analysis, her argument is "sufficient to show an error and why, under applicable authorities, that error must be redressed." *Blocker v. Blocker*, 2017 UT App 10, ¶ 10, 391 P.3d 1051; *see also State v. Lucero*, 2002 UT App 135, ¶ 13, 47 P.3d 107 ("To permit meaningful appellate review, briefs must comply with the briefing requirements sufficiently to enable us to understand what particular errors were allegedly made, where in the record those errors can be found, and why, under applicable authorities, those errors are material ones necessitating reversal or other relief." (quotation simplified)).

¶38 Utah law requires courts to make the following two findings of fact before modifying a child custody order: (1) there has been a material change in the circumstances upon which the earlier order was based, and (2) a change in custody is in the best interests of the child. *See* Utah Code Ann. § 30-3-10.4(2) (LexisNexis Supp. 2017). This two-step approach was first established by the Utah Supreme Court in *Hogge* and later codified. 629 P.2d at 54.

¶39 Strong public policy reasons support the adoption of the *Hogge* test. Stable custody arrangements are critical to a child's proper development. The presumption is that "custody placements, once made, should be as stable as possible unless the factual basis for them has completely changed." *Becker v. Becker*, 694 P.2d 608, 610 (Utah 1984). The two-step procedure "allows courts to monitor the best interests of children and especially to provide stability to children by protecting them from 'ping-pong' custody awards." *Wright v. Wright*, 941 P.2d 646, 651 (Utah Ct. App. 1997).

¶40 "The important public policy to have courts ensure that a child's best interests will be met before transferring custody of the child applies in all cases involving a change in a child's custody." *Taylor v. Elison*, 2011 UT App 272, ¶ 22, 263 P.3d 448 (quotation simplified). A district court cannot avoid making

these findings by modifying custody arrangements as a sanction. *See Wright*, 941 P.2d at 652; *see also Blanco v. Blanco*, 311 P.3d 1170, 1175 (Nev. 2013) ("[A] court may not use a change of custody as a sword to punish parental misconduct, such as refusal to obey lawful court orders, because the child's best interest is paramount in such custody decisions."); *Fenton v. Webb*, 705 N.W.2d 323, 327 (Iowa Ct. App. 2005) (holding that the district court abused its discretion in determining custody by entering a default judgment without "evidence to support the custody change").

¶41 In *Wright*, this court reversed a judgment by default that transferred custody of the parties' child without making the required findings. 941 P.2d at 652. The district court found that the mother was at fault for failing to respond to the father's discovery requests and that sanctions were justified under rule 37 of the Utah Rules of Civil Procedure. *Id*. at 647. The court struck the mother's answer and counterpetition for custody, entered the mother's default on the father's petition for custody, and entered a judgment transferring custody of the child from mother to father. *Id*. at 647.

¶42 On appeal, this court held that the court acted within its discretion in ordering rule 37 discovery sanctions against the mother and "striking the [m]other's answers and counter-petition and entering default," *id*. at 650, but "abused its discretion by modifying the child custody order because it failed to first take evidence and make the necessary findings," *id.* at 652. This court held that the important public policy considerations underlying the *Hogge* test "apply just as much to cases involving judgments by default as to cases involving a litigated dispute decided upon the merits." *Id.* at 651–52. Accordingly, "before a [district] court may enter a judgment by default that transfers custody of a child, the trial court must take evidence and then make findings that a substantial change of circumstances has occurred and that transferring custody of the child is in the child's best interests." *Id.*

¶43    In this case, the court entered judgment by default and modified custody based solely on Mother's failure to pay her share of the custody evaluator's fee. Although the written findings of fact and conclusions of law, drafted by Father's attorney, purported to reflect factual findings regarding a substantial change of circumstances and the best interests of the child, the court did not hear any evidence on which those findings could be based. Father contends the district court considered the custody evaluator's recommendation, but the evaluator had not submitted a report or testified before the district court. The parties' agree that the evaluation was "not favorable" to Mother, but this fact did not provide a sufficient basis on which to assess the child's best interests. By modifying the custody arrangement without taking evidence and making its own assessment regarding the circumstances and best interests of the child, the court exceeded its discretion.

¶44    The remaining question is whether the court acted within its discretion in striking Mother's petition. Our review of this issue is impeded by the district court's failure to specify the authority it was invoking to impose sanctions. Without knowing the applicable context, we cannot determine what findings, if any, the court was required to make to support the imposition of sanctions. For instance, "before a district court may impose discovery sanctions under rule 37, the court must find on the part of the noncomplying party willfulness, bad faith, or fault." *Clifford P.D. Redekop Family LLC v. Utah County Real Estate LLC*, 2016 UT App 121, ¶ 14, 378 P.3d 109 (quotation simplified). Similarly, while a court has inherent authority to impose contempt sanctions, "a finding of contempt is proper only when the person cited for contempt knew what was required, had the ability to comply, and intentionally failed or refused to do so." *LD III LLC v. Davis*, 2016 UT App 206, ¶ 13, 385 P.3d 689 (quotation simplified).

¶45    Here, a finding, based on evidence, that Mother was able to pay the evaluator but nonetheless refused to comply with the

court's order may well have supported the imposition of sanctions, but the district court made no such finding. Consequently, we vacate the imposition of sanctions in its entirety but without prejudice to the district court's prerogative to impose appropriate sanctions on a sound, articulated basis, short of modifying custody without conducting the *Hogge* test.

## V. Attorney Fees

¶46 Finally, Mother argues that the court failed to consider the required factors when awarding Father his attorney fees. Father argues that this court lacks jurisdiction to consider this issue because Mother filed her notice of appeal before entry of the order setting the amount of attorney fees. Mother does not contest the reasonableness of the amount of the award but only the initial ruling that Father was entitled to attorney fees. Because we have elected to treat this as an interlocutory appeal from the modified divorce decree, we have jurisdiction to review the rulings made in that order, including the conclusion that Father was "to be awarded his costs and attorney fees."

¶47 Generally, "attorney fees are awardable only if authorized by statute or by contract." *Dahl v. Dahl*, 2015 UT 79, ¶ 168 (quotation simplified). In divorce cases, Utah Code section 30-3-3(1) permits a court to award attorney fees and costs "to enable the [receiving] party to prosecute or defend the action." Utah Code Ann. § 30-3-3(1) (LexisNexis 2013). To justify such an award, the court must make specific findings regarding "the receiving spouse's financial need, the payor spouse's ability to pay, and the reasonableness of the requested fees." *Dahl*, 2015 UT 79, ¶ 168 (quotation simplified); *see also* Utah R. Civ. P. 102(b) (listing findings required to grant costs and fees under Utah Code section 30-3-3(1)). "Failure to consider these factors is grounds for reversal on the fee issue." *Taft v. Taft*, 2016 UT App 135, ¶ 87, 379 P.3d 890 (quotation simplified).

¶48    On the other hand, where attorney fees are awarded as a sanction, "section 30-3-3 and its requirements are not implicated." *Liston v. Liston*, 2011 UT App 433, ¶ 26, 269 P.3d 169. A district court may "award attorney fees or other costs in a situation where one party has been uncooperative and failed to comply with discovery requests and court orders." *Goggin v. Goggin*, 2013 UT 16, ¶ 32, 299 P.3d 1079. Such awards are designed to compensate the receiving party for the expense incurred as a result of the sanctioned party's misconduct. *Id.* ¶ 36. A district court's "authority to impose an award of fees as a sanction against a party who has been obstructive or contemptuous is derived from several statutes and common law doctrines," including the contempt statute, court rules, and the court's equitable and inherent powers. *Id*. The source of authority determines what factual findings, if any, the court is required to make before imposing sanctions.

¶49    Here, the court did not identify the legal basis for the award of attorney fees. If the court intended to award fees under section 30-3-3(1), it did not make the required findings regarding Father's financial need or Mother's ability to pay. If the court intended to award attorney fees as a sanction, it did not identify the authority on which the sanctions were based or the conduct that would merit such sanctions. Given the lack of findings to support an attorney fee award on either ground, we vacate the award without prejudice to the district court entertaining renewed motions for attorney fees on remand.

CONCLUSION

¶50    We reverse the imposition of sanctions and vacate the order modifying the decree of divorce. We remand for further proceedings consistent with this opinion.

───────────