**2019 UT App 104**

## THE UTAH COURT OF APPEALS

JESSECA RAE ROSS,
Appellee,

*v.*

TIMOTHY RONALD ROSS,
Appellant.

Opinion
No. 20170916-CA
Filed June 13, 2019

Third District Court, Salt Lake Department
The Honorable Su Chon
No. 154901171

Bastiaan K. Coebergh, Attorney for Appellant

Kyle Adams, Attorney for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and DIANA HAGEN concurred.

HARRIS, Judge:

¶1     When they divorced, Jesseca Rae Ross (Mother) and
Timothy Ronald Ross (Father) agreed to an arrangement under
which they equally shared physical custody of their two minor
children (the Children). After a time, Mother expressed a desire
to relocate from Salt Lake County to Uintah County, and she
wanted to take the Children with her. To effectuate this change,
she filed a notice of relocation with the district court pursuant to
Utah Code section 30-3-37, but did not file a separate petition to
modify the joint custody provisions of the divorce decree. Father
protested that no change in custody could be ordered in
Mother's favor in the absence of a petition to modify, but the
district court disagreed. After holding a hearing, the court
allowed Mother to relocate with the Children, and changed
custody to make Mother the primary physical custodian. Father

now appeals from that decision, asserting that the district court improperly ordered a change in custody without requiring Mother to file a petition to modify. We agree with Father's argument, and therefore reverse the court's order and remand the case for further proceedings consistent with this opinion.

BACKGROUND

¶2    After seven years of marriage, Mother and Father divorced, and stipulated to a decree that provided for joint legal custody and equally-shared physical custody of the Children. Less than a year after the decree was entered, Mother filed a notice of relocation, setting forth her intent, "due to her impending marriage," to relocate to Lapoint, a small farming community in Uintah County, Utah. The notice also stated Mother's intent to take the Children with her, and her belief that such a move was in the best interest of the Children, since she "provided the majority [of] care" for them. Mother did not separately file a petition to modify asking the court to change the custody provisions of the decree.

¶3    Father objected to Mother's notice to relocate, arguing that the relocation would require the Children to leave their current school district, where they were "well adjusted and happy," that he and Mother had equal custody of the Children according to the stipulated decree, and that the move would interfere with his access to, and parent-time with, the Children.

¶4    A hearing was held before a domestic relations commissioner, who heard argument from both sides and apparently considered the matter a close call. He lamented the fact that no petition to modify had been filed, stating that although he did not want to "put the parties through a . . . more expensive elaborate process than necessary," he viewed this case as one "that just begs for having someone file a petition to modify to address this relocation," and stated that he was not "comfortable that [he knew] the right answer" in the absence of

the more formal process a petition to modify would provide. He also noted that the filing of a petition might have caused the parties and the court to "consider whether some kind of custody evaluation or mediation-based custody evaluation . . . might be useful in . . . coming up with the best solution." At the conclusion of the hearing, and in the absence of a petition to modify or a custody evaluation, the commissioner recommended that Mother not be permitted to relocate the Children out of Salt Lake County on a permanent basis, but that the Children could go to Lapoint with Mother for the summer, during which time Father would have parent-time for one weekend each month.

¶5     Mother objected to the commissioner's recommendation, and asked the district court to issue an order allowing the Children to relocate with her permanently. Father opposed that request, and the court held a two-day evidentiary hearing on the matter. At the close of Mother's evidence, Father moved for a directed verdict, specifically raising the issue flagged by the commissioner, namely, that Mother had not filed a petition to modify and therefore was not entitled to a change in custody. The court denied the motion for a directed verdict, and at the conclusion of the hearing took the matter under advisement.

¶6     A few weeks later, the district court issued a written decision on Mother's objection. Therein, the court noted that, "[o]rdinarily, a petition to modify is required to change the custody arrangements" at issue, and acknowledged that granting Mother's relocation would alter the current physical custody arrangement. However, the court explained that the arrangement would change "regardless" because the commissioner's recommendation effectively awarded custody to Father, and determined "that no petition to modify is required with a notice of relocation." The court then proceeded to apply a "best interest" analysis with regard to the relocation, and concluded that relocation would be in the best interest of the Children. Accordingly, the court overruled the commissioner's recommendation, allowed Mother to relocate to Lapoint with the

Children, and ordered a change of custody making Mother the primary physical custodian and awarded Father parent-time pursuant to the relocation statute.

¶7 Thereafter, Father filed a motion for a new trial and a motion to amend findings based on allegedly newly discovered evidence, insufficiency of the evidence, and the verdict being contrary to law. The court denied Father's motions, finding that the allegedly new evidence was available before the evidentiary hearing, that the evidence presented at trial had been sufficient, and that its ruling complied with the requirements of the relevant statutes.

## ISSUE AND STANDARD OF REVIEW

¶8 Father now appeals both the district court's original order allowing the relocation and changing custody, as well as the court's subsequent order denying his motions for a new trial and to amend findings. Father asks us to consider three issues, but because of our resolution of the first, we need not consider the other two.[1] Father's first argument raises the issue of the propriety of ordering a change in custody in favor of a relocating parent in the absence of a petition to modify. That question involves the interpretation of various statutes and one procedural rule. "The applicability of a particular rule or statute

---

1. Father's other two arguments are: (1) that the district court's relocation decision, on its merits, was against the clear weight of the evidence presented and/or supported by insufficient evidence; and (2) that the court ignored newly discovered relevant evidence when it denied his motion for a new trial. In light of our determination that a change in custody in Mother's favor was not permitted in the absence of a petition to modify, and our resolution vacating the district court's custody order and remanding for further proceedings, we need not reach the merits of Father's additional arguments.

is a question of law reviewed for correctness." *Gullickson v. Gullickson*, 2013 UT App 83, ¶ 16, 301 P.3d 1011. "A [district] court's interpretation of a statute is a question of law that we review for correctness." *Donnelly v. Donnelly*, 2013 UT App 84, ¶ 11, 301 P.3d 6 (quotation simplified). And a "district court's interpretations of rules of procedure are questions of law reviewed for correctness." *Simler v. Chilel*, 2016 UT 23, ¶ 9, 379 P.3d 1195 (quotation simplified).

## ANALYSIS

¶9     In this case, we must consider whether, under applicable statutes and rules, a district court may order a change in custody in favor of a relocating parent in the absence of a petition to modify. Father asserts that a district court is not authorized to take such action and, after examination of the relevant provisions, we agree.

¶10     Our procedures for interpreting statutes and rules are the same: "[W]e do so according to our general rules of statutory construction." *Arbogast Family Trust v. River Crossings, LLC*, 2010 UT 40, ¶ 18, 238 P.3d 1035. We interpret the relevant provisions according to their plain language, "seek[ing] to give effect to the intent of the body" that enacted the statute or promulgated the rule, *Burns v. Boyden*, 2006 UT 14, ¶ 19, 133 P.3d 370, and we read the language "in light of its linguistic, structural, and statutory context," *Olsen v. Eagle Mountain City*, 2011 UT 10, ¶ 9, 248 P.3d 465.

¶11     Here, we start our analysis with two provisions that generally require the filing of a petition to modify before allowing changes to divorce decrees. First, rule 106(a) of the Utah Rules of Civil Procedure states generally that, "[e]xcept as provided in Utah Code Section 30-3-37, proceedings to modify a divorce decree or other final domestic relations order shall be commenced by filing a petition to modify." Second, Utah Code section 30-3-10.4(1) states specifically that, "[o]n the petition of

one or both of the parents, . . . the court may, after a hearing, modify or terminate an order that established joint legal or physical custody" if certain conditions are met. Utah Code Ann. § 30-3-10.4(1) (LexisNexis Supp. 2018). Thus, rule 106 establishes a general rule—subject to an important exception, discussed below—that any changes to divorce decrees must be brought about by the filing of a petition to modify, and section 10.4 makes clear that this rule applies specifically in the context of modifying decrees that provide for joint custody.

¶12   Mother points out, however, that the exception set forth in rule 106 expressly references the relocation statute, and allows a district court to alter custody orders in the relocation context even in the absence of a petition to modify.[2] *See* Utah R. Civ. P. 106(a) (stating that, "[e]xcept as provided in" the relocation statute, modifications require a petition). We acknowledge Mother's point that rule 106 refers to the relocation statute and allows exceptions to the petition requirement in relocation cases, at least to the extent that the relocation statute permits modification. But we do not read rule 106 as providing a blanket exception for all modifications that might be sought in the relocation context.

¶13   The language "[e]xcept as provided" signals a limited exception to the petition requirement. *See id.* To be sure, the drafters of the rules could have stated that petitions to modify are required "except in cases in which relocation is sought."

2. Section 10.4 contains no such exception, and it could be argued that section 10.4 eclipses rule 106's relocation exception in instances where a relocating party seeks to alter a joint custody order. We do not address this argument further, however, because Father does not expressly make it, and because—as we explain herein—even if section 10.4 is somehow construed (like rule 106) to contain such exceptions as are permitted by the relocation statute, those exceptions do not benefit Mother here.

Such language would have made clear that, in relocation cases, a court could modify divorce decrees in any manner, even without a petition to modify. But the drafters did not use such language; instead, they included a simple reference to the relocation statute, signaling an intent to incorporate into rule 106 whatever exceptions that statute allows. Indeed, at oral argument, Mother's counsel acknowledged that, even in the relocation context, a party seeking to modify alimony or child support would need to file a petition to modify, since the relocation statute makes no mention of alimony or child support. Thus, a court may not simply ignore rule 106's petition requirement any time section 30-3-37 is invoked; rather, a court may modify a decree without a petition only in instances in which section 30-3-37 allows such modification.

¶14 And section 30-3-37 contemplates modification of divorce decrees in only three particular instances: (a) it allows modification of parent-time arrangements in cases where a custodial parent is allowed to relocate with a child, *see* Utah Code Ann. § 30-3-37(5)–(11) (LexisNexis Supp. 2018); (b) it allows assessment of transportation costs, *see id.* § 30-3-37(12); and (c) it allows modification of custody—but only in favor of the non-relocating party—in cases in which the court decides not to allow the children to relocate with the relocating party, *see id.* § 30-3-37(4). Only subsection (4) addresses a change of custody (as opposed to parent-time),[3] providing:

---

3. Custody and parent-time are conceptually distinct. *See Jones v. Jones*, 2016 UT App 94, ¶ 10, 374 P.3d 45 (stating that, "while altering custody orders generally requires a showing of substantial change in circumstances material to the modification of custody, a lesser showing may be required when the change sought is not a change of custody," and holding that "there was no error in the district court's failure to require a substantial or material change of circumstances" when modifying parent-time (quotation simplified)); *see also Erickson v. Erickson*, 2018 UT App

(continued…)

> In a hearing to review the notice of relocation, the court shall, in determining if the relocation of a custodial parent is in the best interest of the child, consider any other factors that the court considers relevant to the determination. *If the court determines that relocation is not in the best interest of the child, and the custodial parent relocates, the court may order a change of custody.*

*Id.* (emphasis added).

¶15 The relocation statute thus authorizes a change of custody only if two events occur: (1) the court "determines that relocation is not in the best interest of the child," thus denying the relocating parent's request for the children to relocate; and (2) the custodial parent decides to relocate—alone—in spite of the court's ruling. *Id.*; *see also Pingree v. Pingree*, 2015 UT App 302, ¶¶ 12–13, 365 P.3d 713 (noting that, "if a court determines that relocation is not in a child's best interest, it then has authority to order a change in custody if a custodial parent chooses to relocate," and that "a conditional change of custody ordered under section 30-3-37(4) is triggered only if . . . a custodial parent elects to relocate despite a court's finding that relocation would not be in the child's best interest"). Only then is the court authorized to order a change of custody under section 30-3-37. The relocation statute does not contemplate changes in *custody* (as opposed to parent-time) outside that context, and therefore if a change in custody is sought in a different context, rule 106 (as well as, in some cases, section 30-3-10.4) requires the filing of a petition to modify.

---

(…continued)
184, ¶ 16, 437 P.3d 370 ("A material change of circumstances with respect to parent-time is thus a different inquiry from whether there was a material change with respect to custody." (quotation simplified)).

¶16    Thus, we read rule 106 and the relocation statute together to require that a petition to modify be filed in all cases in which a grant of the relocation request will necessitate a change in custody in favor of the relocating party. In a situation in which a parent enjoys "sole" (as opposed to "joint") physical custody, and wishes to relocate with a child, no change in custody will be required in the event the relocation request is granted. That parent will have sole physical custody prior to the request, and (if granted) that parent will have sole physical custody after the relocation. In that situation, the court need only consider appropriate modifications to the parties' parent-time schedule.[4]

¶17    The situation is different, however, where the parent who seeks to relocate does not already have sole physical custody, but wishes to attain sole physical custody upon relocation.[5]

---

4. Although the relocation statute does not expressly cover a situation in which a noncustodial parent seeks leave to relocate, *see* Utah Code Ann. § 30-3-37(4) (speaking only in terms of "determining if the relocation of a *custodial parent* is in the best interest of the child" (emphasis added)), for obvious reasons no change in custody would be required if a noncustodial parent relocates and does not seek a change in custody status associated with that relocation. Whether a petition to modify would be required in this context—given that the relocation statute does not specifically speak to this situation, and that rule 106's exception is limited to situations covered by the relocation statute—to address requested changes to the parent-time arrangement is a question we leave for another day.

5. According to statutory definition, "joint physical custody" occurs when a "child stays with each parent overnight for more than 30% of the year, and both parents contribute to the expenses of the child in addition to paying child support." *See* Utah Code Ann. § 30-3-10.1(3)(a). Thus, any parent who enjoys less than 70% of overnights has something short of sole physical

(continued…)

Because "relocation" is defined as "moving 150 miles or more from the residence of the other parent," *see* Utah Code Ann. § 30-3-37(1), joint physical custody is very difficult to practicably maintain in the wake of one parent's relocation. These practical realities mean that a parent who relocates with a child will usually need to be awarded sole (as opposed to joint) physical custody. And if that parent does not already enjoy sole physical custody, that parent will need to seek a modification of the existing custody arrangement in order to facilitate well-ordered relocation, because rule 106 requires the filing of a petition for any modification, and the relocation statute does not provide an exception in that particular situation.

¶18    In this case, Mother did not have sole physical custody prior to seeking relocation. As noted above, the parties shared physical custody equally. Moreover, Mother did not claim that her situation presented one of the presumably rare situations in which a joint custody arrangement could be continued even after she moved more than 150 miles away from Father; that is, the success of Mother's relocation request—at least insofar as she would be able to take the Children with her—depended upon Mother being awarded sole physical custody. In this situation, the relocation statute does not contemplate a change in custody without a petition to modify, and therefore rule 106's petition requirement applies with full force.[6]

---

(…continued)
custody, and would almost certainly need to seek a change in the custody arrangement in order to relocate with a child.

6. By contrast, the relocation statute (and rule 106's exceptional reference to it) would have allowed the district court to order a change of custody in favor of Father, even without a petition to modify, in the event that it had denied Mother's relocation request and Mother had decided to relocate anyway. *See* Utah Code Ann. § 30-3-37(4); Utah R. Civ. P. 106(a).

CONCLUSION

¶19 Mother needed to file a petition to modify in order to effectuate the change of custody in her favor that was, as a practical matter, essential to her relocation request. The relocation statute does not contemplate such a change of custody, and therefore the exception to rule 106's petition requirement does not cover this situation. Because Mother did not file a petition to modify, the district court erred in ordering a change of custody in favor of Mother without one. Accordingly, we vacate the district court's custody order and remand this case for further proceedings consistent with this opinion.

¶20 On remand, one of the parents (or both) will need to file a petition to modify to address the custody situation. It will be up to the district court, on remand, to determine whether the Children will remain in Lapoint pending adjudication of the petition(s) to modify. In making that determination, and in ruling upon the merits of the petition(s) to modify, the court should consider the present circumstances of the parties and the Children and not simply re-litigate the issues as they were at the time of the now-vacated custody order, bearing in mind its duties to "ensure that a child's best interests will be met before transferring custody" and "to provide stability to children by protecting them from 'ping-pong' custody awards." *Chaparro v. Torero*, 2018 UT App 181, ¶¶ 39–40, 436 P.3d 339 (quotation simplified).

_____