2022 UT App 46

## THE UTAH COURT OF APPEALS

NICOLE WIDDISON,
Appellant,
*v.*
LEON BRYANT WIDDISON,
Appellee.

Opinion
No. 20200484-CA
Filed April 7, 2022

Third District Court, Salt Lake Department
The Honorable Robert P. Faust
No. 144906018

Julie J. Nelson and Alexandra Mareschal, Attorneys
for Appellant

Todd R. Sheeran, Attorney for Appellee

JUDGE RYAN D. TENNEY authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and DIANA HAGEN concurred.

TENNEY, Judge:

¶1      By statute, a district court must ordinarily find that a
material and substantial change in circumstances occurred
before modifying the custody provisions in a divorce decree. In
this appeal, we're asked to answer two main questions about
this statute.

¶2      First, if a decree is silent about whether one of the parents
has legal custody of a child, is the district court later required to
find that there was a material and substantial change in
circumstances before determining whether that parent has legal
custody in the first instance? We conclude that a material and
substantial change in circumstances is not required in such a
scenario.

¶3    Second, in situations where the custody modification statute is applicable, can a custodial parent's attempt to sever a years-long relationship between the noncustodial parent and a child legally qualify as a material and substantial change? We conclude that it can.

¶4    Based on these two conclusions, we affirm the modifications at issue.

## BACKGROUND[1]

### *The Divorce Decree*

¶5    Nicole and Bryant Widdison were married in June 2004. They had two children during their marriage, Daughter and Son. Bryant is Daughter's biological father, but Nicole conceived Son with another man during a brief separation from Bryant. Nicole and Bryant reconciled before Son's birth, however, and Bryant was in the delivery room when Nicole gave birth to Son. Bryant is listed on Son's birth certificate, and Son bears Bryant's surname.

---

1. The parties are referred to in different ways in the record and the appellate briefing—sometimes by their formerly shared surname, sometimes by their non-married surnames, and sometimes by their first names. For consistency, we'll refer to them as Nicole and Bryant, and we intend no disrespect by the apparent informality.

    To enhance readability, we'll also use Nicole and Bryant—and Daughter and Son when referring to their children—without using brackets to note any alterations, even when we're quoting other-named references to the parties or their children from the record or the briefing.

¶6    Nicole and Bryant divorced in July 2015. Daughter was ten years old at the time, and Son was about three and a half. The divorce decree (the Decree) was largely based on a stipulation between Nicole and Bryant.

¶7    In the portions relevant to this appeal, the Decree provided:

    1.    **Physical Custody**: Nicole shall have physical custody of both said minor children. Bryant will remain on Son's birth certificate unless or until he is challenged by some other legitimate party who prevails in a court of law.

    . . . .

    4.    **Legal Custody**: *The parties shall have "joint legal custody" of Daughter.*

    . . . .

    8.    **Parent-Time/Visitation**: Bryant shall be entitled to reasonable parent-time with Daughter. Reasonable parent-time shall be defined as the parties may agree. However, if the parties are not able to agree, Bryant shall be entitled to the following parent-time:

        . . . .

        2) . . . Bryant may have two (2) overnights each week to coincide with the days that he is off work with the parties' oldest child, Daughter[,] during the school year. . . . During the Summer months Bryant may have three overnights every other week and

> two overnights on the alternating weeks. . . . *As for the youngest child, Son, parent-time will be at Nicole's sole discretion . . . .*
>
> 3) Bryant shall also be entitled to holidays and summer parent-time as articulated in U.C.A. § 30-3-35 . . . .
>
> . . . .
>
> 14. **Child Support**: . . . Based on [the parties'] incomes, and a sole custody worksheet (even though the parties have a different parent-time arrangement and with the benefit and consent of counsel after being informed and involved), Bryant shall pay Nicole child support in the amount of $450.00 each month for the one female child (Daughter). . . . Any reference to a financial obligation[] or child support in this document shall be interpreted as applying only to the older child (Daughter).

(Emphases added.)

¶8 As noted, the Decree gave Nicole "sole discretion" over whether Bryant could spend parent-time with Son. During the first three years after the divorce, Nicole "regularly and consistently allowed Son to exercise time with Bryant." Her usual practice was to allow Son to accompany Daughter whenever Daughter visited Bryant. Since the Decree entitled Bryant to spend a little over 30 percent of the time with Daughter, this meant that Bryant spent a little over 30 percent of the time with Son during those years too.

*The Modification Petitions*

¶9    In November 2016, the State filed a petition to modify the Decree to require Bryant to pay child support for Son. The State's petition noted that Son was born during Nicole and Bryant's marriage, and it asserted that Bryant was Son's presumptive legal father under Utah Code § 78B-15-204(1)(a) (LexisNexis 2018)[2], which states that a "man is presumed to be the father of a child if," among others, "he and the mother of the child are married to each other and the child is born during the marriage." The State noted that "[n]o child support has been ordered for this child." It accordingly asked the court to "find[] Bryant to be the legal father of Son" and order him to pay child support for Son.

¶10   In his answer to the State's petition, Bryant agreed that he "is the presumptive father" of Son and expressed his "desire[]" to "be treated as the natural father of Son" "for all intents and purposes." Bryant also asked the court for an order granting him joint legal and physical custody of Son, as well as a "clarification of his rights and duties, namely parent-time with Son."[3]

¶11   In September 2018, Bryant filed his own petition to modify the Decree. There, Bryant asserted that he "has been the only father figure that Son has known," and he argued that he "should be presumed and considered the legal father of Son." Bryant also argued that "[t]here has been a significant, substantial and material change in circumstances that has

---

2. Because there have been no substantive changes to the relevant statutory provisions, we cite to the most recent version of the Utah Code for the reader's convenience.

3. The State's petition was eventually resolved through the district court's modification of the Decree discussed below.

occurred since the parties' Decree of Divorce concerning custody, parent-time, and child support, such that modification of the Decree of Divorce is in the best interests of the minor children."[4]

*Motion for Temporary Relief*

¶12 About two months after Bryant filed his petition to modify, Nicole suddenly cut off Bryant's parent-time with Son. After she did, Bryant filed a motion for temporary relief, asking the court to award him "his historical/status quo parent time with both the minor children" until his petition to modify was resolved.

¶13 The matter went before a court commissioner, and a hearing was held in which Bryant and Nicole and their respective attorneys were present. During the hearing, the commissioner heard how often Son accompanied Daughter during her visits with Bryant. At the close of the hearing, the commissioner ordered Nicole to "immediately resume Bryant's historical/status quo parent time with both minor children" and to "allow Son to follow the parent-time schedule of Daughter, consistent with the historical parent-time exercised by Bryant."

¶14 Nicole objected to the commissioner's recommendation, but the district court overruled that objection. The court instead

---

4. After Bryant's petition, Son's biological father moved to intervene. In a subsequent filing, the biological father explained that paternity for Son had not been established and was "literally left hanging" because Bryant "was never awarded custody, [or] parent time, and [was] not ordered to pay child support" for Son in the Decree. A few months later, however, the biological father withdrew this motion, and he has not been a part of this litigation since.

agreed to temporarily "modify the stipulation to reflect what the parties themselves were actually doing regarding parent time." The court surmised that "reducing the visitation the parties themselves were doing" might "be harmful to the child." The court continued that it "could also be argued that such visitation is helpful and beneficial to the child, especially since both children will be doing visitation together and parents have the right of visitation with their children." Nicole was thus ordered to give Bryant "the same parent-time with Son, consistent with Bryant's parent time with Daughter," while Bryant's petition to modify was pending.

*The Relocation Proceedings*

¶15   A short time later, Nicole requested an expedited phone conference with the court, explaining that the company she worked for was requiring her to relocate to California. After a hearing, the commissioner recommended that "[t]he children . . . remain in Utah until the Court changes the Order regarding custody and parent time."

¶16   During the hearing, the commissioner further noted that "[c]onspicuously absent from Nicole's argument [was] anything—from this Court's perspective—showing she's considering the child's perspective." In particular, the commissioner explained that

> Son has shared time with the older sibling going to Bryant's home. Nicole has regularly and consistently allowed this child to exercise time with Bryant. In [November] of 2018, Nicole disagreed. And I agree, she does have the discretion to make decisions with regard to Son. From the child's perspective, however, one child goes with Dad and the other doesn't, because Bryant stepped on Nicole's toes. She says, I'm

establishing boundaries; you don't get to see this child. That's fine if this child is a car or a refrigerator. Son [is] a person who has Bryant's surname, who has been exercising time—from what I can see—[a] full seven years.

The commissioner further explained that "there's been enough of a change, enough consistency for this younger child, that he has followed the older child, has the same surname [as Bryant], [Bryant's] name's on the birth certificate that has not been changed, to follow [Daughter's parent-time] schedule."

¶17    Nicole did not object to the commissioner's recommendation, and she hasn't relocated in the meantime.

*The District Court's Ruling on Bryant's Petition to Modify*

¶18    A bench trial was held in November 2019 to settle the issues raised in Bryant's petition to modify and Nicole's request to relocate. The district court later entered an order titled "Amended Findings of Fact and Conclusions of Law on Petitioner's Relocation Request," which addressed both the relocation request and the broader issues regarding Bryant's legal and physical custody.

¶19    In its order, the court first concluded that the petition to modify was "appropriate in that there have been material changes in circumstances warranting modification of the parties' Decree in the children's best interests, which have not previously been adjudicated." The court did not, however, more specifically identify what those "changes in circumstances" were.

¶20    Second, the court concluded that Nicole had "failed to rebut the presumption of paternity that exists in this case." In the court's view, Nicole had not shown by a "preponderance of the evidence that it would be in the best interest of Son to

disestablish the parent-child relationship that has been created and substantiated by both of the parties over many years." The court then "enter[ed] an adjudication that Bryant is the father of Son" and modified the Decree to "impose as to Son parental obligations" on Bryant, "including the obligation to pay child support for Son."

¶21 Third, the court "award[ed] Bryant joint legal custody of Son on the same terms as the Decree provide[d] for Daughter."

¶22 And finally, the court ruled that Nicole was "free to relocate." If she did, the court awarded Bryant parent-time with both children under the terms set forth in Utah Code section 30-3-37(6) (Supp. 2021). If Nicole stayed in Utah, however, the court awarded Bryant "parent time with Son on the same terms as was occurring with Daughter."

¶23 That same day, the court issued a separate "Order Modifying Decree of Divorce." This order reiterated that Bryant is "adjudicated to be the legal father of both Daughter and Son," that Bryant now bore "all parental obligations in accordance with Utah law," including the "obligation to pay child support" for both children, and that Bryant had "joint legal custody of both children on the same terms set forth in the [original] Decree with respect to Daughter." The court further repeated the parent-time schedule that was set forth in its ruling on the relocation request—i.e., it awarded Bryant parent-time with Son on the same terms that he had with Daughter. It then declared that, "[e]xcept as modified by this Order, the parties' Decree remains in full force and effect."

ISSUES AND STANDARDS OF REVIEW

¶24 Nicole challenges the district court's decisions to give Bryant (1) legal custody of Son and (2) parent-time with Son. We

review a district court's decision to modify a divorce decree, as well as a court's parent-time determination and custody award, for abuse of discretion. *See Stephens v. Stephens*, 2018 UT App 196, ¶¶ 20–21, 437 P.3d 445; *MacDonald v. MacDonald*, 2017 UT App 136, ¶ 7, 402 P.3d 178.

¶25    As discussed below, we regard one portion of the ruling in question as a determination of custody in the first instance. "A district court's award of custody is reviewed for abuse of discretion." *Taylor v. Elison*, 2011 UT App 272, ¶ 8, 263 P.3d 448. As also discussed below, another portion of Nicole's argument turns on whether the circumstances at issue can legally qualify as a change in circumstances. We review that decision for correctness. *See Toone v. Toone*, 952 P.2d 112, 114 (Utah Ct. App. 1998) ("[I]n this case, we are presented with a question of law regarding what constitutes a substantial change of circumstances, which is reviewed for correctness.").

ANALYSIS

¶26    "While there are several tools that can generally be used to modify final judgments, one tool that is specific to family law cases is the petition to modify." *McFarland v. McFarland*, 2021 UT App 58, ¶ 25, 493 P.3d 1146 (quotation simplified); *see also Ross v. Ross*, 2019 UT App 104, ¶ 11, 447 P.3d 104 ("[R]ule 106 establishes a general rule . . . that any changes to divorce decrees must be brought about by the filing of a petition to modify."). "Parties in family law cases may use this tool, in accordance with applicable statutes and rules, to seek modification of various provisions of decrees." *McFarland*, 2021 UT App 58, ¶ 25.

¶27    "On the petition of one or both of the parents," the governing statute allows a court to "modify or terminate an order that established joint legal custody or joint physical custody" if "the circumstances of the child or one or both parents

. . . have materially and substantially changed since the entry of the order to be modified" and the modification "would be an improvement for and in the best interest of the child." Utah Code Ann. § 30-3-10.4(1) (LexisNexis 2019). This is a "bifurcated procedure," *Hogge v. Hogge*, 649 P.2d 51, 53 (Utah 1982), and Utah courts have consistently referred to it as a "two-step" process, *Doyle v. Doyle*, 2011 UT 42, ¶ 24, 258 P.3d 553. *See also Becker v. Becker*, 694 P.2d 608, 610–11 (Utah 1984). Notably, it's also a sequential process, in that a court cannot "reopen[] the custody question until it has first made a threshold finding of substantially changed circumstances." *Doyle*, 2011 UT 42, ¶ 25 (quotation simplified).[5]

¶28    As explained above, the district court made a number of changes to the Decree, and Nicole now challenges two of them on appeal: the decision to award Bryant legal custody of Son and the decision to grant Bryant parent-time with Son. We address each in turn.

---

5. A careful reader might note that the cited passage from *Doyle v. Doyle*, 2011 UT 42, ¶ 25, 258 P.3d 553, referred to a "finding of substantially changed circumstances," even though the statute speaks of circumstances that have "materially and substantially changed." Utah Code Ann. § 30-3-10.4(1)(a) (LexisNexis 2019). In what appear to be stylistic or brevity-based alterations, cases interpreting this statute have often shorthanded the phrase, sometimes referring to it as the "change-in-circumstances requirement," *see, e.g.*, *Harper v. Harper*, 2021 UT App 5, ¶ 14, 480 P.3d 1097, or sometimes adding one or both (or even neither) of the modifiers. This opinion will follow suit. Any reference to the "change-in-circumstances" requirement, with or without the modifiers, is intended to refer to a material and substantial change in circumstances.

## I. Legal Custody

¶29 Nicole first challenges the district court's decision to award Bryant joint legal custody of Son. Nicole claims that, "[u]nder the decree, [she] had sole . . . legal custody of Son," and she then argues that under the two-step process described above, the district court erred by granting legal custody to Bryant without first providing any "analysis regarding a change in circumstances." In her view, "[t]he district court disregarded the custody . . . arrangements from the decree and awarded joint [legal] custody of Son as if the decree had never been entered."

¶30 Nicole's argument, however, is based on a false premise—namely, that the Decree had awarded her sole legal custody of Son. But it hadn't. The Decree had a separately enumerated "Legal Custody" subsection. That subsection stated that "[t]he parties shall have 'joint legal custody' *of Daughter*." (Emphasis added.) This provision said nothing about Son, and no other provision in the Decree purported to establish whether Nicole had legal custody of Son (let alone sole legal custody), or instead whether Bryant did (or didn't) have any form of legal custody of Son himself. Instead, on this, the Decree was silent.[6]

¶31 But the court was legally required to make a legal custody determination for Son. The Utah Code states that courts "*shall* enter . . . an order of custody"—both legal and physical—when a "married couple's marriage is declared void or dissolved." Utah Code Ann. § 30-3-10(1) (2019) (emphasis added). The term

---

6. The district court appears to have first learned about this omission during the modification proceedings. When it did, the court said that it "would not have signed" the Decree had it realized that the Decree did not establish whether Bryant had legal custody of Son. The court also referred to the Decree's failure to give Bryant "any parental obligations" as "a mistake."

"shall," of course, has long been regarded as a command. *See, e.g., Lay v. Lay*, 2018 UT App 137, ¶ 12, 427 P.3d 1221.[7]

¶32 The Decree's silence impacts how we view Nicole's arguments on appeal. Again, the Decree is silent about whether Bryant (or any other putative father) had legal custody of Son, and it likewise said nothing about whether Nicole (or any other mother) had legal custody of Son. So the question here is whether the court could correct this oversight without having to first determine that there had been a sufficient change in circumstances to warrant modification.

¶33 We conclude that a change in circumstances was not required for the court to correct the Decree in this manner. As noted, the change-in-circumstances requirement is set forth in Utah Code section 30-3-10.4. This requirement "serves multiple interests." *Doyle*, 2011 UT 42, ¶ 25. "First, because a custody decree is predicated on a particular set of facts, that decree is res judicata," so "the changed-circumstances requirement prevents an unnecessary drain on judicial resources by repetitive litigation of the same issue when the result would not be altered." *Miller v. Miller*, 2020 UT App 171, ¶ 17, 480 P.3d 341

---

7. There's good reason for this particular requirement. The term "legal custody" refers to a broad "relationship" that "embod[ies]" "the right to physical custody of the minor," "the right and duty to protect, train, and discipline the minor," "the duty to provide the minor" with the necessities of life (including medical care), and "the right to determine where and with whom the minor shall live." Utah Code Ann. § 80-1-102(45) (Supp. 2021). Given the broad scope of these responsibilities, a determination of who has legal custody of a child will heavily influence the child's welfare moving forward. It's therefore vitally important to the child, his or her parents, and even the State.

(quotation simplified). "Second, the changed-circumstances requirement protects the custodial parent from harassment by repeated litigation." *Id.* (quotation simplified). And third, "the requirement protects the child from 'ping-pong' custody awards," *id.* (quotation simplified), thus emphasizing "the importance of a stable and secure homelife for children who are shifted from one parent figure to another" and ensuring that custody issues are not frivolously or infinitely "reopen[ed]," *Hogge*, 649 P.2d at 53–54 (quotation simplified).

¶34 None of these concerns are implicated here. To the contrary, since the question of whether Bryant had legal custody of Son was unaddressed in the Decree, there was nothing for the court to "reopen" or change. *Id.* at 53. Thus, properly understood, Nicole isn't really challenging a decision to *modify* a prior determination that Bryant should (or shouldn't) have legal custody of Son. Rather, what Nicole is actually challenging is a decision that, in effect, decided legal custody in the first instance. Because of this, we conclude that no change in circumstances could reasonably be required. After all, if it were true that a court couldn't correct an omission of a required determination without pointing to a change in circumstances, divorce decrees like this one would be left indeterminate about key issues such as who had legal custody of a child. And the effect of such omissions would be felt by both the children and the parents, all of whom would be left without the guidance and certainty that custody determinations are intended and required to provide. We decline to create, let alone endorse, such an approach.

¶35 Our determination thus leaves the remaining question of whether the court exceeded its discretion when it awarded joint legal custody of Son to Bryant in the first instance. We conclude that it didn't.

¶36 "Under both the United States Constitution and the constitution of [Utah], a parent possesses a fundamental liberty

interest in the care, custody, and management of the parent's child." Utah Code Ann. § 80-4-104(1) (Supp. 2021). Because of this, legal custody is linked to the fact of parentage. Our supreme court, for example, has held that a father has "legal custody of [his] [c]hild by virtue of his paternity," *In re adoption of B.B.*, 2017 UT 59, ¶ 81, 417 P.3d 1, and the same would of course be true for mothers by virtue of their maternity. Indeed, by statute, Utah law "presume[s] that a parent automatically enjoys legal custody" of his or her child, and this is so because of "the fundamental liberty interest of a parent concerning the care, custody, and management of the parent's child." *Id.* (quotation simplified). The legislature has also established "a rebuttable presumption that joint legal custody" "is in the best interest of the child." Utah Code Ann. § 30-3-10(3) (2019).

¶37 Here, Son was born during Nicole and Bryant's marriage, so Bryant was legally "presumed to be" Son's father. *Id.* § 78B-15-204(1)(a) (2018). And while this presumption of paternity can be overcome, the district court concluded that it was not. Instead, in the same ruling at issue on appeal, the court declared Bryant to be Son's legal father, and Nicole has not challenged that paternity decision on appeal.

¶38 As also noted, however, Bryant's now-established paternity of Son presumptively gave him joint legal custody of Son too, based in part on Bryant's own constitutional interests in the care and raising of Son, who is his child. *See In re adoption of B.B.*, 2017 UT 59, ¶ 81. In her arguments to us, the only reason that Nicole gives for overcoming this presumption is the fact that the initial Decree was silent about whether Bryant had legal custody of Son. But as we've explained, that omission was a legal error. And when the district court was alerted to that error, it appropriately fixed it. Once the court did, the result was that Bryant—who was present at Son's birth, was listed on Son's birth certificate, and has acted as Son's father since birth—was

now Son's legal father, which meant that he was presumptively entitled to legal custody of Son too.

¶39 In short, under these circumstances, no change in circumstances was required, and we see no abuse of discretion in the court awarding legal custody of Son to Bryant in the first instance.

## II. Physical Custody

¶40 Nicole next challenges the district court's decision to modify the Decree's provisions regarding parent-time with Son. As set forth below, we first clarify (A) the nature of the modification, (B) the district court's reasons for it, and (C) the standard of review applicable to Nicole's particular challenge. We then hold that (D) the change in circumstance at issue can legally support a modification of custody.

### A. The Nature of the Modification

¶41 The Decree was silent about legal custody of Son, but it wasn't silent about physical custody. Instead, it affirmatively gave Nicole "physical custody of both said minor children"—i.e., both Daughter and Son. And while the Decree then set forth a delineated parent-time schedule for Daughter, it left Bryant's parent-time with Son to "Nicole's sole discretion."

¶42 In the ruling at issue, the district court modified this. The court removed Nicole's "sole discretion" over parent-time for Son and set forth two alternative parent-time schedules. If Nicole remained in Utah, Bryant would have parent-time with Son "on the same terms as was occurring with Daughter." If she moved to California, however, Bryant would have one weekend per month with both children as well as additional time with them during the summer. *See* Utah Code Ann. § 30-3-37(6) (2019).

¶43    Although this ruling was couched in terms of parent-time, the parties have both suggested in their briefing that this amounted to a modification of physical custody of Son. We agree.

¶44    Physical custody and parent-time "are conceptually distinct." *Ross*, 2019 UT App 104, ¶ 14 n.3. "Physical custody has long been understood to involve much more than actual possession and care of a child," instead implicating the right and "legal responsibility to provide supervision and control" of a child. *Hansen v. Hansen*, 2012 UT 9, ¶ 15, 270 P.3d 531. By contrast, the term "parent-time" more narrowly refers to the amount of time that a parent is entitled to spend with the child. *See generally* Utah Code Ann. §§ 30-3-34 to -36 (2019 & Supp. 2021) (setting forth minimum, optional, and equal parent-time schedules as well as parent-time considerations for special circumstances).

¶45    That said, the terms are intertwined because, "[b]y statutory definition, there are two kinds of physical custody—sole physical custody and joint physical custody," and "the dividing line" between the two is largely "based on the number of overnight visits enjoyed by each parent." *McFarland*, 2021 UT App 58, ¶ 36. When a child "stays with each" of his or her "parent[s] overnight for more than 30% of the year, and both parents contribute to the expenses of the child in addition to paying child support," each of the parents has joint physical custody of the child. Utah Code Ann. § 30-3-10.1(3)(a) (2019). But when a child stays with one parent overnight for less than 30% of the year, the parent who has over 70% of the overnights is considered to have sole physical custody of the child. *See id.*; Utah Code Ann. § 78B-12-102(15) (Supp. 2021); *McFarland*, 2021 UT App 58, ¶ 36.

¶46    Here, the Decree did not specifically determine whether Nicole had "sole" or "joint" physical custody of either of the

children. But at least with regard to Son, the Decree effectively awarded Nicole sole physical custody because it gave her "sole discretion" whether Son would spend any parent-time with Bryant at all. And, critically for this appeal, the Decree also awarded Bryant what amounted to joint physical custody of Daughter. After all, the dividing line is 30% of the overnights, and 30% of the 365 days in a year is roughly 110. In the proceedings below, the commissioner reviewed the Decree and determined that the parent-time schedule gave Bryant more "than the 110 overnights," which accordingly meant that Bryant had "joint physical custody" of Daughter. Thus, when the district court later equalized Bryant's parent-time with Son to match the parent-time he had with Daughter, it in effect modified the Decree to give Bryant joint physical custody of Son too.[8]

B.     The Basis for the District Court's Change-in-Circumstance Determination

¶47     As noted, the district court determined that "there have been material changes in circumstances warranting modification of the parties' Decree in the children's best interests, which have not previously been adjudicated." But the court did not specifically delineate what those changes were. Because of this, Nicole initially asks us to reverse the modification based on the court's failure to provide any "analysis as to why a custody modification was justified" under the required change-in-circumstances test.

---

8. Nicole and Bryant do not challenge this characterization on appeal. To the contrary, they both adopt it, repeatedly referring to the modification decision as being one that shifted Nicole's physical custody of Son from sole to joint.

¶48 We acknowledge that the district court's ruling on this could have been more clear. But even so, "a trial court's failure to make explicit findings supporting its decision does not, alone, warrant reversal so long as the basis for the trial court's ruling is readily apparent from the record." *In re A.S.*, 2014 UT App 226, ¶ 7, 336 P.3d 582; *cf. State v. Pecht*, 2002 UT 41, ¶ 34, 48 P.3d 931 (explaining that "where the record as a whole sufficiently" indicates the basis for the court's ruling, "an absence of written findings will not invalidate the trial court's conclusions").

¶49 Here, the court expressly concluded that there had been a change in circumstances, so the court was plainly cognizant of the requirement and believed that it had been met. And from our review of the record, we believe that the basis for the court's determination is sufficiently apparent. In its ruling regarding the temporary orders, the court temporarily "modif[ied] the stipulation to reflect what the parties themselves were actually doing regarding parent time." The court surmised that "reducing the visitation the parties themselves were doing" might "be harmful to the child" and that "visitation is helpful and beneficial to the child, especially since both children will be doing visitation together and parents have the right of visitation with their children." It thus ordered Nicole to give Bryant "the same parent-time with Son, consistent with Bryant's parent time with Daughter," while Bryant's petition to modify was pending. This initial decision demonstrated two key things: (1) the court intended to equalize Bryant's parent-time with Daughter and Son, and (2) it more specifically intended to prevent Nicole from "reducing" Bryant's parent-time with Son.

¶50 The court's ruling on Nicole's relocation request (which, again, accompanied the modification ruling) was consistent with these goals. There, the court ruled that Bryant should be declared Son's father—a determination that, again, Nicole has not challenged on appeal. Notably, in doing so, the court expressed its intention to not allow Nicole to "disestablish the

parent child relationship" between Bryant and Son "that has been created and substantiated by both of the parties over many years."

¶51    Together, these orders reflect the court's intention to formally recognize and now protect Bryant's relationship with Son. From all this, we believe it is "readily apparent from the record," *In re A.S.*, 2014 UT App 226, ¶ 7, that the change in circumstances found by the court to support modification included: (i) the changes in Bryant's relationship with Son (namely, the three years of additional parent-time bonding, as well as Bryant's new status as Son's legally recognized father), and (ii) Nicole's recent attempts to cut off Bryant's access to Son.

C.    Standard of Review

¶52    Nicole next argues that Bryant's further-developed relationship with Son and her decision to cut off parent-time between the two could not legally qualify as a change in circumstances under the custody modification statute. As noted in the Standard of Review section above, *supra* ¶ 25, we regard this as a legal question that is reviewed for correctness. In light of our past caselaw, this warrants some explanation.

¶53    This court has previously held that a district court's "determination regarding whether a substantial change of circumstances has occurred is presumptively valid, and our review is therefore limited to considering whether the [district] court abused its discretion." *Nave-Free v. Free*, 2019 UT App 83, ¶ 8, 444 P.3d 3 (quotation simplified); *accord Christensen v. Christensen*, 2017 UT App 120, ¶ 10, 400 P.3d 1219; *Doyle v. Doyle*, 2009 UT App 306, ¶ 7, 221 P.3d 888, *aff'd*, 2011 UT 42, 258 P.3d 553. We reaffirm our adherence to this general rule here.

¶54    On occasion, however, we have held that the abuse-of-discretion standard applies to a district court's "*ultimate*

determination regarding the presence or absence of a substantial change in circumstances." *Peeples v. Peeples*, 2019 UT App 207, ¶ 11, 456 P.3d 1159 (emphasis added); *accord Harper v. Harper*, 2021 UT App 5, ¶ 11, 480 P.3d 1097. But when we have been presented with an argument that didn't challenge the court's "ultimate determination" of whether certain facts constituted a material and substantial change in circumstances, but instead contended that particular facts or developments simply couldn't be legally considered as part of the court's analysis, we have treated those questions as questions of law for which we give the district court's ruling no appellate deference.

¶55 Our decision in *Toone v. Toone*, 952 P.2d 112 (Utah Ct. App. 1998), is illustrative. There, after a divorce had been finalized, federal laws regarding military pensions changed; and if those new laws were applied to the parties' divorce, they would have allowed the ex-wife a larger share of her ex-husband's military pension. *See id.* at 113–14. The ex-wife accordingly filed a petition to modify, asserting that the change in laws amounted to a change in circumstances that justified modification of the divorce decree. *Id.* We disagreed. *See id.* at 114. Notably, while reaffirming the rule that a district court's "modification determination" is reviewed "for an abuse of discretion," we regarded the particular question before us as being "a question of law regarding what constitutes a substantial change of circumstances, which is reviewed for correctness." *Id.*

¶56 Another case proceeded similarly. In *Davis v. Davis*, 2011 UT App 311, ¶ 6, 263 P.3d 520, we construed a party's argument that certain events "could not be used as evidence" in the change-in-circumstances analysis as a legal question that we reviewed for correctness.

¶57 This distinction, though perhaps subtle, is important, and it accords with how standards of review operate. The "primary function of a standard of review is to apportion power and,

consequently, responsibility between trial and appellate courts for determining an issue." *State v. Levin*, 2006 UT 50, ¶ 19, 144 P.3d 1096 (quotation simplified). In this sense, the standard of review determination "allocate[s] discretion between the trial and appellate courts" based on an assessment of "the relative capabilities of each level of the court system." *Id.* (quotation simplified).

¶58    Again, the statute in question here requires a court to determine whether there was a material and substantial change in circumstances. *See* Utah Code Ann. § 30-3-10.4(2)(b)(i) (2019). The evaluation of whether a particular change was material or substantial *enough* calls for a weighing of facts and circumstances. District courts are in a better position than we are to do such weighing, which is why those ultimate determinations receive discretionary deference. But if a party instead makes a threshold argument that a particular kind of fact or development can't legally be used in the weighing at all, that argument essentially asks us to establish the permissible boundaries of the district court's discretionary decision-making authority. Such a question is legal in nature, which is why that aspect of the ruling is reviewed for correctness.

¶59    In her opening brief, Nicole argues that the change in circumstances identified by the district court "is not the sort of 'change' that justifies modification *under Utah law*." (Emphasis added.) In her reply brief, Nicole similarly asserts that the district court "did not find[] changed circumstances that *qualify* under Utah law." (Emphasis added.) She accordingly asks us to review the district court's decision for correctness, rather than an abuse of discretion. So viewed, we don't understand Nicole to be challenging the court's weighing of the permissible facts. Rather, we understand Nicole to be making a legal argument about whether the court could even consider the change in relationship between Son and Bryant in the intervening years and Nicole's subsequent, unilateral decision to cut off their parent-time as a

material change in circumstances. Because her argument is legal in nature, we review this aspect of the ruling for correctness.

D.     The Change in Circumstances

¶60     Properly understood, the question, then, is whether the change in circumstances identified above can legally qualify as a change in circumstances under Utah law. We conclude that it can.[9]

¶61     As noted, the statute requires a determination that "a material and substantial change in circumstance has occurred." Utah Code Ann. § 30-3-10.4(2)(b)(i) (2019). A chief "goal" of this required determination is to give children "some measure of certainty and stability" after their parents or guardians have separated. *In re E.H.*, 2006 UT 36, ¶ 2, 137 P.3d 809. Indeed, the supreme court has suggested that children are "entitled" to "permanence and stability" moving forward. *Id.* ¶ 16.

¶62     For good reason. The "emotional, intellectual, and moral development of a child depends upon a reasonable degree of stability in the child's relationships to important people and to

---

9. In his brief, Bryant argues that Nicole either did not preserve or may instead have waived this argument. Bryant also separately argues that a district court is not required to make such a determination when converting an award of sole custody to one of joint custody. But because we agree with Bryant on the merits of the change-in-circumstances determination, we need not reach those questions. *See, e.g.*, *Fritsche v. Deer Valley Ridge at Silver Lake Ass'n of Unit Owners*, 2022 UT App 11, ¶ 58 n.6, 504 P.3d 761 ("If the merits of a claim can easily be resolved in favor of the party asserting that the claim was not preserved, we readily may opt to do so without addressing preservation." (Quotation simplified.)).

its environment." *Elmer v. Elmer*, 776 P.2d 599, 602 (Utah 1989). Both the supreme court and this court have recognized that stability is paramount with respect to "custody arrangements." *Hogge*, 649 P.2d at 54; *see also Kramer v. Kramer*, 738 P.2d 624, 626 (Utah 1987) (recognizing that "stable custody arrangements are of critical importance to the child's proper development"); *Taylor v. Elison*, 2011 UT App 272, ¶ 22, 263 P.3d 448 (recognizing the "general policy of maintaining custodial stability to the extent it is reasonable and wise to do so while [a child's] parents seek to resolve their differences" and that "it is generally in the best interests of the child to remain with his or her existing custodial parent").

¶63   This stability interest is one of the driving forces behind the change-in-circumstances requirement, which "provide[s] stability to children by protecting them from 'ping-pong' custody awards." *Chaparro v. Torero*, 2018 UT App 181, ¶ 39, 436 P.3d 339 (quotation simplified). "Absent such a requirement, a decree of divorce would be subject to ad infinitum appellate review and readjustment." *Foulger v. Foulger*, 626 P.2d 412, 414 (Utah 1981). Thus, the understood "rationale" for this requirement is "that custody placements, once made, should be as stable as possible unless the factual basis for them has completely changed." *Kramer*, 738 P.2d at 627 (quotation simplified).

¶64   But this leads to the problem that the district court was confronted with here. Again, the parent-child relationship between Bryant and Son had existed since birth, had solidified in the several-year period after the divorce, and had just now been officially recognized as a matter of law. Despite this, Nicole had recently invoked her authority under the Decree to cut off Bryant's access to Son entirely, thus amounting to something akin to complete custodial interference.

¶65　The legislature, however, has recognized that "each divorcing, separating, or *adjudicated* parent is *entitled* to . . . frequent, meaningful, and *continuing access* with the parent's child consistent with the child's best interest," Utah Code Ann. § 30-3-32(2)(b)(ii) (Supp. 2021) (emphases added), and that, absent evidence of abuse or harm to the child, "it is in the best interests of the child to have *both* parents actively involved in parenting the child," *id.* § 30-3-32(2)(b)(iii) (emphasis added). True, such relationships can be altered or even severed by operation of law. But here, the Decree was the product of a stipulation, not a court determination, and no court has ever determined that it was not in the best interests of Son to have a relationship with Bryant.

¶66　Given that Bryant has now been adjudicated to be Son's father, we believe that the court could legally conclude that this change, coupled with Nicole's concomitant attempt to undermine their ability to have any relationship at all, warranted a modification of the Decree to protect the father-son relationship moving forward.

¶67　Nicole, however, resists this conclusion. She argues that her decision "to allow (or not allow) parent-time" is not "the type of change in circumstances that justifies modification under Utah law." We disagree.

¶68　As a starting point, we note that Nicole's argument has no support in the controlling statutory text. Section 30-3-10.4(2)(b)(i) requires a court to find that "a material and substantial change of circumstance has occurred." There is nothing in the text of this statute that creates the limit suggested by Nicole—i.e., the statute doesn't prevent a district court from concluding that a custodial parent's efforts to cut off a years-developed relationship between a child and the noncustodial parent qualifies as such a change.

¶69 Nicole nevertheless points to two cases that, in her view, support her proposed limitation. But we don't find either case to require a different result here.

¶70 First, Nicole relies on a passage from *Doyle* in which the supreme court "adopted a general rule" under which "the asserted change" in circumstances must be related to the "parenting ability or the functioning of the presently existing custodial relationship," rather than the "parenting of the noncustodial parent." 2011 UT 42, ¶ 41 (quotation simplified).

¶71 But while *Doyle* referred to this as a "general rule," it never said it was an "exclusive" one. Indeed, in the very next sentence, *Doyle* recognized "an exception to the general rule" that was based on a prior Utah case. *Id. Doyle* itself thus shows that this "general rule" is subject to judicially recognized exceptions.

¶72 Moreover, section 30-3-10.4(1)(a) itself provides that, in a petition to modify, the petition or affidavit must "allege[] that admissible evidence will show that the circumstances of the *child or one or both parents* . . . have materially and substantially changed since the entry of the order to be modified." (Emphasis added.) By allowing a modification to be based on a change in the circumstances of "the child or one or both parents," the legislature directly contemplated that a change in circumstances of any of the parties—the child or either parent—can provide the basis for a modification. So while *Doyle*'s statement provides some guidance, we do not understand it to be an inviolable limitation of the sort proposed by Nicole.

¶73 Second, Nicole claims that in *Crouse v. Crouse*, 817 P.2d 836 (Utah Ct. App. 1991), we adopted a rule under which a noncustodial parent's strengthened relationship with a child cannot qualify as a change in circumstances for purposes of a

subsequent modification request. We disagree with Nicole's interpretation of *Crouse*.

¶74 In *Crouse*, the mother had been given primary physical custody of the children after the divorce, but she had then allowed the children to "spen[d] almost equal time" with their father in the ensuing years. *Id.* at 837. Based in part on this allowance of extra time, the father later requested a modification of the decree to give him "primary physical custody" over the children. *Id.* The district court denied his modification request, and we affirmed that decision. *Id.* at 837, 840.

¶75 Nicole points to a passage from our affirmance in which we recognized that the "fact that Mrs. Crouse has been generous in sharing physical custody with Mr. Crouse is not a ground to change physical custody; if anything, it supports leaving primary physical custody with Mrs. Crouse, as it shows that she has lived up to the responsibilities of a custodial parent." *Id.* at 839.

¶76 In contrast to Nicole, however, we don't read this passage as having determined that, as a matter of law, a district court cannot consider such facts in its analysis. It's significant that we were affirming the district court's *denial* of a petition to modify in *Crouse*. It's also significant that the same section of the opinion began with a reminder that a "trial court's decision concerning modification of a divorce decree will not be disturbed absent an abuse of discretion," *id.* at 838, and that we then referred to the court's "discretion" three more times in that section, *id.* at 838–39. Thus, properly understood, *Crouse* was not establishing rules about the facts that a court could legally consider. Rather, *Crouse* was giving deference to the district court's determination that the facts before it were not enough to satisfy the requisite standard.

¶77 Moreover, we also note that the district court's use of its discretion in *Crouse* was consistent with the understood purpose behind the change-in-circumstances requirement. The mother there had originally been awarded primary physical custody, and after she let the children "spen[d] almost equal time" with their father over a period of a few years, the father asked the court to grant him "primary physical custody" as a result. *Id.* at 837. In this sense, the father's request, if granted, would have created instability in the children's lives by changing their primary caregiver.

¶78 The opposite is true here. Again, Bryant had acted as Son's father since birth. After Nicole then allowed Son to continue developing this relationship with Bryant over the course of several post-divorce years, Nicole changed her mind and decided to cut off their relationship, thus essentially leaving Son fatherless. Put simply, the effect of our decision here is consistent with *Crouse*, not inconsistent with it. There, we affirmed a district court decision that preserved stability in the children's lives. And here, we're likewise affirming a district court decision that preserved stability in the affected child's life.

¶79 In sum, the statute does not impose the limitation proposed by Nicole, and we think that doing so ourselves would be inconsistent with Utah caselaw, the importance of parent-child relationships, the protections given to those relationships by constitution and statute alike, and the modification statute's recognized goal of promoting stability in children's lives. We therefore conclude that a district court can legally determine that a unilateral attempt by a custodial parent to sever a child's years-developed relationship with his or her noncustodial parent can constitute a substantial and material change in circumstances, thereby allowing the court to proceed to the best interests step of the modification analysis. We accordingly affirm the district court's conclusion that a change in circumstances occurred here.

¶80   Having done so, we add two cautionary notes to this decision. First, Nicole suggests that a ruling like this one will essentially penalize a custodial parent for being generous with the noncustodial parent's ability to exercise parent-time. We're sensitive to this concern. But again, a district court can't proceed to the best-interests step of the analysis based on just any change in circumstances. Rather, the court must first determine that the change is "material and substantial." Utah Code Ann. § 30-3-10.4(2)(b)(i). Whether a particular increase or decrease in parent-time is enough to qualify will be circumstance-dependent, and we have no need to more specifically cabin the district courts' discretionary authority here. But in light of Nicole's concern, we do note that the change in question in this case was from something akin to 30% of the time to 0%. We're simply holding that a court can regard such a dramatic alteration of the existing parent-child relationship to be a material and substantial change in circumstances.

¶81   Second, we again note that, even when a district court concludes that a change in circumstances has occurred, this does not mean that the court must modify the decree. Again, this is a two-step analysis, and under the second step, a court can only modify a decree if it finds that the modification "would be an improvement for and in the best interest of the child." *Id.* § 30-3-10.4(2)(b)(ii). Thus, even in a circumstance like this one, a district court could still determine that modification is not appropriate if it concludes that the proposed modification would not be in the best interests of the child.

¶82   In this sense, our decision today does not restrict the district courts' options. Rather, it keeps them open. We simply hold that, in a case like this one, a district court *can* determine that a material and substantial change in circumstances has

occurred—not that it *must*, and not that it must then make any particular ruling regarding the best interests of the child.[10]

---

10. As noted, we understand Nicole's argument to be that a district court can't legally regard circumstances like these as a material and substantial change in circumstances. We don't understand Nicole to be separately arguing that, if these facts can legally be considered, the court abused its discretion in determining that a material and substantial change in circumstances occurred.

In any event, if Nicole has impliedly made that challenge too, it fails. We "review the court's ultimate determination regarding the presence or absence of a substantial change in circumstances for an abuse of discretion." *Harper v. Harper*, 2021 UT App 5, ¶ 11, 480 P.3d 1097 (quotation simplified). And an "appellate court can properly find abuse of discretion only if no reasonable person would take the view adopted by the trial court." *Id.* (quotation simplified).

Moreover, with respect to this discretionary determination, the amount of change necessary varies based on whether the initial decree came from a stipulation as opposed to a contested divorce trial. This is so because "an unadjudicated custody decree is not based on an objective, impartial determination of the best interests of the child." *Zavala v. Zavala*, 2016 UT App 6, ¶ 17, 366 P.3d 422 (quotation simplified). So when a court is subsequently asked to modify a custody order from a stipulated decree, the court is essentially being asked to "adjudicate[] it for the first time." *Id.* As a result, a modification of a stipulated decree requires "a lesser showing" "than would be required to modify an adjudicated award." *Id.*

Here, the Decree was the product of a stipulation, not an adjudication, so the modification required only this lesser showing. And as discussed above, Son now had several years

(continued…)

## CONCLUSION

¶83   For the foregoing reasons, we affirm the district court's decision to give Bryant joint legal and physical custody of Son.

————————

(…continued)

more of post-divorce parent-time bonding with Bryant, Bryant had now been legally declared to be Son's father, and Nicole had recently interfered with that relationship. Given our conclusion that such circumstances can legally qualify as a change in circumstances, we have no hesitation in likewise concluding that the court did not abuse its discretion in determining that these circumstances satisfied the "lesser showing" required for a modification of this stipulated Decree. *Id.*